## Commonwealth *v.* Mauch, Betz Appeal.

*Custody of minor child—Parent and child—Evidence—Consideration of evidence by Superior Court.*

The right of a father to the custody of his minor children grows out of his obligation to maintain and educate them. This right is not to be interfered with except for the most substantial reasons affecting the children's welfare.

While the general rule is that the parent has the first right to the custody of his infant children, this right must be yielded if the children's welfare would be more secure elsewhere. In all such cases the paramount consideration is the best interest and permanent welfare of the child.

On a petition by a father for the custody of his minor child it appeared that the child was in the custody of its maternal grandmother, who had practically reared it. Prior to the time the proceedings were instituted the father failed to show any paternal interest in the child and made no voluntary contributions towards its support. The evidence disclosed that the father has no home of his own and that the environment in which the child is being reared is conducive to its physical and moral development.

Under such circumstances an order granting the father the custody of the child will be reversed.

In such proceedings the Appellate Court will consider all the evidence and express its own judgment with respect to the facts and inferences of fact and not merely inquire whether there is any competent evidence to support the conclusions of the lower court.

Argued April 14, 1927. Appeal No. 176, April T., 1927, by Lucy Betz from order of C. C. Allegheny County, 1922, No. 1577, in the case of Commonwealth of Pennsylvania v. Eugene Mauch. Before Porter, P. J., Henderson, Trexler, Linn, Gawthrop and Cunningham, JJ. Reversed.

Habeas corpus for the custody of a minor child. Before Kennedy, P. J.

The facts are stated in the opinion of the Superior Court.

The court ordered that the custody of the child be awarded to its father, Eugene Mauch. Lucy Betz appealed.

*Error assigned* was the order of the court.

*C. L. McCobb,* and with him *John E. McCalmont,* for appellant.

*J. H. W. Simpson,* and with him *Wm. C. McClure,* for appellee.

Opinion by Cunningham, J., July 8, 1927:

Lucy Betz, the maternal grandmother of Edward J. Mauch (also called Robert Mauch), born March 4, 1922,

to her daughter Grace, now deceased, and Eugene Mauch, her daughter's husband, appeals from an order of the County Court of Allegheny County, under date of February 17, 1927, awarding the custody of this child to its father. The jurisdiction of the court below attached under the provisions of the Act of March 19, 1915, P. L. 5, supplementing the Act of May 5, 1911, P. L. 198, which established a County Court for the County of Allegheny, and constituting that court the Juvenile Court of said county. By this supplement it is provided that in "all proceedings concerning dependent, delinquent, incorrigible, or neglected children under the age of sixteen years, as defined by existing laws relating thereto, the county court of Allegheny County shall have exclusively all the jurisdiction," and that "said county court shall also have jurisdiction in all proceedings for the custody of children, where the court has acquired jurisdiction in matters relating to their maintenance." Such proceedings were instituted in this case in November, 1922, in which proceedings the mother of the child, Grace Mauch, was the prosecutrix on a charge of non-support. On this appeal we deem it to be our duty in dealing with matters of fact to consider all the evidence and reach and express our own judgment with respect to the facts and inferences of fact and not merely inquire whether there is any competent evidence to support the conclusions of the court below. If the father of this child had a home of his own, in which it could be properly maintained and reared, and had ever shown that he has any reasonable conception of his duties and responsibilities as a father, we would not be disposed to disturb the order appealed from because we have no disposition to depart from the general rule "that the father is entitled to the custody of his infant children, that right growing out of his obligation to maintain and educate them": Heinemann's App., 96 Pa. 112. In that case it is further

stated however that "this [right] is not on account of any absolute right in the father, but for the benefit of the infant, the law presuming it to be for its interest to be under the nurture and care of its natural protector, both for maintenance and education." Again, in the language of Mr. Justice FELL in Commonwealth ex rel. Parker, App., v. Blatt, 165 Pa. 213, "The legal right of the parent to the custody, care and companionship of his children is not to be interfered with except for the most substantial reasons affecting their welfare." But it is also true, as stated by Judge GAWTHROP in Commonwealth ex rel. Bloomfield, App., v. Faxstein, 84 Pa. Superior Ct. 243, that "In all such cases the paramount consideration is the best interest and permanent welfare of the child. While the general rule is that the parent has the first right to the custody of his infant child, this right must be yielded if the child's welfare would be more secure elsewhere." The question here involved is whether the presumption in favor of the father is overthrown by the evidence. Most of the facts which we consider controlling are undisputed. The child was born March 4, 1922, and one of the reasons for the marriage of his parents on October 3, 1921, although no arrangements for housekeeping had been made, needs no comment. After the marriage each of the parties returned to the homes of their respective mothers, but two weeks later the husband brought his wife to live with him at his mother's house where he was living and paying his board. When the baby was about three months old, viz., on May 30, 1922, and after the relations had become somewhat strained at the Mauch home on the south side of Pittsburgh, the wife arrived with her baby at her mother's home on the north side. There is a conflict in the testimony with relation to the circumstances surrounding the return of the wife to the Betz home, but we are satisfied that Mauch took his wife and baby and a pack-

age of clothes to her mother's home and after the bell had been rung departed hastily leaving his family on his mother-in-law's porch. The husband saw his wife at the Betz home once and met her several times outside. There were several casual discussions about getting rooms and living together but no bona fide offer was ever made by the husband to provide any kind of a home for his wife and child and neither he nor his mother has seen the child since it was three months old.

The evidence relative to the earnings of the father between the date of his marriage and the late summer of 1924 is not as clear as he might have made it but it justifies the conclusion that at the time of his marriage and for about three years thereafter, he was earning approximately $90 per month and that his employment was continuous with the exception of one interruption due to a short illness. During this time he was living with his mother in a house she rented from her father and paying his board at the rate of $15 per week but made no voluntary contribution toward the maintenance of his wife and child. On November 24, 1922, when the child was about eight months old his wife instituted proceedings against him for non-support, which resulted in an order directing him to pay $5 per week for the support of his wife and child and give his own recognizance. This order was not complied with and the arrearages amounted to more than $300 by August 14, 1924, at which time, as a result of attachment proceedings, he was committed until he gave adequate security, two days later, to comply with the original order and to pay $1 per week ''on the arrearages.'' During this month of August, 1924, the husband secured employment with the Road Department of Allegheny County at a salary of $150 per month but manifested no disposition to apply any part of his increased earnings to the support of his family except to make the weekly payment of $5 in accordance with his bond.

His next step was an effort to rid himself of all obligation to support his wife by filing, on November 10, 1924, a libel praying for a divorce upon the ground of desertion, to which libel an answer was filed by his wife denying the desertion and alleging that she had been compelled to seek her mother's home for shelter and food.    There was no justification for the filing of this libel as the separation was at least with his consent, if not at his instance.    After a brief illness Grace Mauch died on October 29, 1925.    At this time the arrearages under the original order still amounted to approximately $300 and upon the death of his wife Mauch immediately discontinued all payments for the maintenance of his child. In November, 1925, Mrs. Betz, the present appellant, presented her petition to the court below, setting forth the neglect of the father and her ability and desire to maintain the child and praying that she be permitted to retain its custody.    After rule and answer the court awarded its custody to her "for the present."    At the time this order was made there were some sub-tenants in the house occupied by the Mauch family and the order was based to some extent upon the fact that at that time the Betz home afforded better material advantages and comforts for the child.    A year later the father presented his petition referring to the previous order and averring that the suggestions of the court below with respect to the vacation by the sub-tenants of a portion of his mother's home had been complied with and praying that the custody of the child be awarded to him.    Mrs. Betz filed an answer to the rule granted on this petition and after a full hearing the order now appealed from was made.    As we view this order in the light of the testimony it amounts practically to taking the child from the custody of one grandmother and giving it to the other.    The father has no home of his own; he is a boarder in his mother's home and is to pay her for boarding the child.    Both grandmothers are estim-

able, active and comparatively young women (one being forty-seven and the other fifty-six years of age) and we are satisfied that each is a fit person to have the custody of the child, but Mrs. Betz has nurtured and cared for it as devotedly as if it were her own child for more than five years while Mrs. Mauch has never seen it since it was about three months old. In so far as the physical and material conditions prevailing in the respective homes are concerned there is but little difference between the two. In the matter of financial ability to support and educate the child the grandmothers are practically on a parity but the present custodian has the advantage of owning her home along with her son and having an independent income of approximately $100 a month. The testimony with relation to the respective homes is summarized in the evidence of Mrs. Margaret Leavy, one of the probation officers of the court below, as follows: "A. The home on the North Side [Betz] is a very nice home, consists of five rooms, all in very good condition, the child sleeps in a room with his grandmother in a separate bed. The grandmother has two sons living there and she has an income of her own independent of her sons or her daughters. The home is modern in every way, has steam heat and a very nice home for a child. The defendant's home is also a nice home, it is a two-story building. The defendant's home is also a nice home, but it isn't as modern as the home on the North Side. The child would be in the front bed room with his grandmother. That is the information I received from the grandmother. The middle bed room or back bed room would be occupied by the child's father, the defendant. Q. Now, Mrs. Leavy, taking into consideration the welfare of the child, which in your opinion would be the better home for the child? A. The home on the North Side, where the child is." On cross examination she testified: "Q. So that either home would be a good home to

raise the child? A. Yes, sir.'' After a careful review and consideration of all the testimony we are not satisfied that this father has as yet shown any real appreciation of his duties and responsibilities in that relationship. In view of his prior neglect of his wife and child, his repudiation of any responsibility for their welfare and his contempt of the original order of court for their maintenance, the burden is certainly on him to convince a court that he now sincerely desires and in good faith intends to make amends for his prior neglect. The fact that he stopped complying with the order of court immediately upon the death of his wife, although he was then earning very substantial wages, and never made any real effort to pay the arrearages, is not without significance. Even if there might have been some excuse for the neglect of his wife, there could be no possible legal or moral justification for his refusal to contribute toward the maintenance of the innocent victim of the parents' mistakes and misunderstandings. On the other hand, if he is now acting in good faith, its present custodian must understand and recognize his parental rights and realize that he is entitled to every reasonable opportunity to become acquainted with his son and to win his affectionate regard. A majority of the members of this court are not satisfied that the best interests of this child will be served by affirming the order of the court below for the absolute transfer at this time of its custody. We shall therefore reverse the order of the court below and substitute therefor an order which will afford ample opportunity for a reconciliation and understanding between appellant and the father, in the hope that they will not permit any differences, religious or otherwise, or any animosities engendered out of former circumstances, to jeopardize the best interests of the child in whom they are both naturally interested. In this view of the case we are of opinion that the order of August 14, 1924, for the pay-

ment of $5 per week, etc., which is still in force, should be vacated, thereby relieving the father from any compulsory payments and making the question of what he should contribute for the support of the child a matter to be decided by him in accordance with his inclinations.

The assignment of error is sustained; the order appealed from is reversed at the costs of appellee and it is directed that the following order be entered in the court below:

> The petition of Eugene Mauch for the custody of his son, Edward J. Mauch (also called Robert Mauch), is dismissed and it is ordered and directed that the said Edward J. Mauch remain in the custody of his maternal grandmother, Lucy Betz, subject to the following conditions:
>
> (1) The said Eugene Mauch shall have the right to visit his son at the home of his said grandmother as frequently as he may desire between the hours of nine o'clock in the morning and eight o'clock in the evening, and shall have the right to the exclusive custody of his son, if he so desires, on every other Sunday until a reasonable hour in the evening.
>
> (2) The said Eugene Mauch may at any time after one year from the date hereof apply to the County Court of Allegheny County for the opening, upon cause shown, of this order and its modification or vacation.
>
> The maintenance order of August 14, 1924, is vacated.

PORTER, P. J., dissents.