## Commonwealth ex rel. Rockey, *v.* Hoffman, Appellant.

*Habeas corpus—Custody of minor child—Parent and child—Right of father to custody of his minor children—Evidence.*

The right of a father to the custody of his infant children grows out of his obligation to educate and maintain them. Such right is not absolute, but rests upon the presumption that it will be for the benefit of the infant to be under the nurture and care of his natural protector. The welfare of the child is the paramount consideration, and the parent's right must be yielded if the child's welfare would be more secure elsewhere.

In a proceeding by a father for the custody of his minor child it appeared that the child was in the custody of his maternal grandmother. It also appeared that the relator had no normal household of his own, but proposed to place the child with his sister during the day for a weekly consideration, and to bring him at a late hour each evening to sleep with him and his father. Prior to the institution of the proceedings, the father had not shown any real paternal interest in his son, while the grandmother had devoted considerable time and attention to the care of the child and is now rearing him in an environment conducive to his physical and moral welfare and normal development.

Under such circumstances it is for the best interests of the child to remain in the custody of his grandmother, and the order of the lower court awarding the custody of the child to the father will be reversed. GAWTHROP, J., dissents.

Argued April 25, 1927. Appeal No. 190, April T., 1927, by defendant from order of the County Court of Allegheny County, No. 827, 1924, in the case of Commonwealth of Pennsylvania ex rel. Charles P.

214 COM. ex rel. ROCKEY *v.* HOFFMAN, Appellant.

Statement of Facts—Opinion of the Court. [91 Pa. Superior Ct.

Rockey v. Frances Hoffman, appellant. Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Habeas corpus for the custody of a minor child. Before KENNEDY, P. J.

The facts are stated in the opinion of the Superior Court.

The court gave the custody of the child to the father. Defendant appealed.

*Error assigned* was the order of the Court.

*Nathan M. Katz,* and with him *J. Benjamin Alpern,* of *Katz & Alpern,* for appellant.

*Homer N. Young* for appellee.

OPINION BY CUNNINGHAM, J., July 8, 1927:

The proceeding in the court below was, in effect, habeas corpus at the relation of Charles P. Rockey to have the custody of his minor son, Raymond Rockey, now in the care of its maternal grandmother, Frances Hoffman, transferred to him. After a hearing the court below made an order under date of March 3, 1927, awarding the custody of the child to its father and the grandmother has appealed from that order. Under the provisions of the Act of July 11, 1917, P. L. 817, it is our duty to "consider the testimony and make such order upon the merits of the case, either in affirmance, reversal, or modification of the order appealed from, as to right and justice shall belong." In an opinion this day filed in the case of Commonwealth v. Eugene Mauch, 91 Pa. Superior Ct. 220, we have pointed out, citing Heinemann's Appeal, 96 Pa. 112, that the right of a father to the custody of his infant children grows out of his obligation to maintain and educate them;

COM. ex rel. ROCKEY *v.* HOFFMAN, Appellant.   215

213, (1927).]          Opinion of the Court.

that it is not an absolute right in the father but rests upon the presumption that it will be for the benefit of the infant to be under the nurture and care of its natural protector; and that the welfare of the child is the paramount consideration. We also said (referring to Commonwealth ex rel. Parker, App., v. Blatt, 165 Pa. 213, and Commonwealth ex rel. Bloomfield, App., v. Faxstein, 84 Pa. Superior Ct. 243) that although the legal right of the parent to the custody, care and companionship of his children is not to be interfered with except for the most substantial reasons affecting their welfare, this right must be yielded if the child's welfare would be more secure elsewhere. The case now at bar resembles the Mauch case in some particulars and here, as there, the controlling question is whether the presumption in favor of this father has been overthrown by the evidence adduced at the hearing.

The material facts requiring consideration in arriving at a conclusion upon the merits of this case are thus disclosed by the testimony: Charles P. Rockey, relator below and appellee here, was married to Mary Hoffman, a daughter of appellant, on September 9, 1920, and the child whose custody is in question was born February 4, 1923. The parents separated in the summer of 1924 and the mother returned, with the child, to her parents' home on Voscamp Street, Pittsburgh, Pa., which is five or six miles distant from the appellee's home at No. 3234 McClure Avenue. The immediate cause of the separation is not clearly disclosed in the testimony but one incident referred to therein, and admitted by the appellee, indicates that he seems to have had no real appreciation of his duties and responsibilities as a husband and father. No provision whatever was made by the appellee for the maintenance of his wife and child but as a result of proceedings in the County Court of Allegheny County, instituted for the purpose of securing support for the child, he was

ordered on July 7, 1924, to pay for that purpose the sum of $6 per week. A reconciliation between the parents occurred in October, 1924, but they again separated in April, 1925, and the wife went to her parents' home with the child. By reason of the delicate health of the wife, her mother, Mrs. Hoffman, from the time of her daughter's return in the spring of 1925 to the date of her death, January 31, 1927, devoted a large part of her time and attention to the care of the child and has had exclusive charge of it since its mother's death. After the second separation the appellee contributed nothing toward the support of his wife but on January 26, 1927, a few days before her death, instituted divorce proceedings on the ground of desertion. Within a few weeks after his wife's death the appellee instituted the present proceedings for the custody of his son, now between four and five years of age. During the period of separation the father occasionally visited his son at the home of appellant and has never been denied permission to see him or to take him away temporarily. The family of appellant consists of her husband, a machinist at the Westinghouse works for the past thirty-four years, an unmarried daughter engaged in nursing, and an unmarried son employed in a clerical capacity. They live in a good house with modern conveniences, erected upon a large lot. The testimony of Mrs. Levy, a desertion and non-support officer of the court below, with respect to the conditions prevailing at the Hoffman home reads: "A. That is a very nice home. The child has received very good care from the grandmother. Q. Have you seen any display of affection there that would warrant your statement? I mean toward the child? A. Yes; I think the grandmother—in fact, the whole family— think a lot of the child. Q. How does the location of that home compare with the location of the home of Mrs. Hurley [appellee's sister] as to the standpoint of

traffic conditions affecting minors? A. There is no traffic where the boy is at present; no street car line or automobile road. Q. Would you be ready to say that it is a safer location from that standpoint? A. Well, I think it would be safer at that home; they have a very nice yard to play in down there; it is not a bad location.''

It is clear that appellant is deeply attached to the child and is also naturally influenced in her desire to retain its custody by the request of her daughter shortly before her death—''Mother, you keep this boy and I know he will have a good home and you will take care of him.'' The Hoffmans own their own home and are financially able to maintain and educate the child and, as we understand the testimony, are desirous of adopting him. The father of the child is a jeweler by trade and lives with his father, a retired policeman seventy-three years of age, in a house which they own at No. 3234 McClure Avenue. His annual income is approximately $1700. The store is on the first floor of this building and the living rooms are located in the rear of and above the store. The only occupants of the living quarters are the appellee and his father. The married sister of appellee, Mrs. Flora Hurley, lives with her husband and one child two doors away, at No. 3228, and appellee and his father go to the Hurley home for their meals. It is proposed by appellee to take his child of tender years from the home of the maternal grandmother and place him in the home of his sister during the daytime for a consideration of $5 per week and then bring the child each night from her home to sleep in the apartment occupied by his father and himself. The arrangement for the care of the child at night is thus described by appellee: ''Q. You are going to take care of him at nights, are you? A. Yes. Q. Where will the bedroom be? A. Upstairs, one flight up. Q. What time do you say you close the store? A. Nine

218   COM. ex rel. ROCKEY *v.* HOFFMAN, Appellant.

Opinion of the Court.   [91 Pa. Superior Ct.

o'clock. Q. What time of the evening are you going to take your boy? A. I probably get home at eight-thirty. Q. So you will take the boy at 8:30 P. M., and bring him up to your apartment. That will be about 8:45 when you get to bed? A. Yes.'' The physical conditions at the Hurley home are thus described by Mrs. Levy: ''Mrs. Hurley's home is a very nice home; it was neat and clean and nicely furnished; I went through to investigate it. I think it would be a very nice home for the little boy.'' The evidence with respect to other, and for the purposes of this case more important, conditions in this home is not so satisfactory. Mrs. Hurley's husband is a police officer and they have a child of their own a few months older than Raymond Rockey. Her husband did not appear as a witness and we have no information therefore with respect to his attitude toward the proposition. It is impossible, under the testimony, to escape the inference that the conditions in the Hurley home have been somewhat disturbed by reason of the intemperate habits of the husband. In 1925 a separation occurred on this account and continued for a period of ten months. As this court stated in Commonwealth ex rel. v. Butler, Apps., 84 Pa. Superior Ct. 291, one of the issues of fact involved in an appeal of this kind, and indeed the most important issue here, is what the best interests and welfare of this child require. The appellee has not shown by his conduct up to the present time any real paternal interest in his son. Aside from the payments made under the compulsion of an order of court his contributions to his support have been negligible. The boy is now in the custody of, and attached to, one who has practically reared him and is bound to him by ties of blood relationship and natural affection, and he is being brought up in an environment which is conducive to his physical and moral welfare and normal development. It is now proposed suddenly to transplant this child into an en-

tirely different environment. The appellee has no normal household of his own and has had no experience in caring for a young child, but proposes to place his son during the day in the care of his sister, for a weekly consideration, and to bring him at a late hour each evening to sleep with him and his aged father. A majority of the members of this court are of opinion that this would not be for the best interests and welfare of this child. We feel that the opinion of the learned judge of the court below places too much stress on the rights of the father and does not give sufficient consideration to the best interests and welfare of the child. Fortunately, there are no religious differences between the parties to this case and it should be entirely possible for this father and the maternal grandparents of this child to arrive at an understanding and agreement with respect to his custody and maintenance that will result in his development under the best possible conditions until he has arrived at an age when his own preferences should be given consideration. Ample opportunity should be afforded the father to exercise toward his son the parental instincts which he now professes. Such differences as now exist seem to be of a character which could readily be overcome with a reasonable amount of forbearance and mutual understanding. If the father is sincere in his professions of a desire to provide for his son it will not be necessary to continue the maintenance order entered on July 7, 1924. We are not disposed to deny him the full custody of his child and at the same time require him to comply with that order. The jurisdiction of the court in this case attached originally through the application for that order and the entire record is before us for review. The assignments of error are sustained and the order awarding the custody of the child to its father is reversed at the costs of appellee and it is directed that in

lieu thereof the following order be entered in the court below:

The rule granted February 23, 1927, on Frances Hoffman to show cause why the petition of Charles P. Rockey for the custody of his son, Raymond Rockey, should not be granted is dissolved and the petition dismissed, and it is ordered and directed that the said Raymond Rockey remain in the custody of his maternal grandmother, Frances Hoffman, subject to the following conditions:

(1)    The said Charles P. Rockey shall have the right to visit his son at the home of the said grandmother as frequently as he may desire between the hours of nine o'clock in the morning and eight o'clock in the evening, and the right to the exclusive custody of his son, if he so desires, on every other Sunday until a reasonable hour in the evening.

(2)    In the event of any material change in the home life or surroundings of either of the parties hereto application may be made to the County Court of Allegheny County for the opening, upon cause shown, of this order and its modification or vacation.

The maintenance order of July 7, 1924, is revoked.

GAWTHROP, J. dissents.