## Wanner *v.* Williams, Appellant.

Argued December 13, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*J. F. Mahoney,* and with him *Vincent J. Dalton,* for appellant.

*Elwyn Jones,* for appellee.

Opinion by Stadtfeld, J., March 1, 1935:

This is a writ of habeas corpus, issued at the rela-

tion of Walter Wanner to obtain custody of his minor son, Charles Kenneth Wanner, born August 15, 1930, and now in the custody of Isaac Williams, the maternal grandfather, residing with his wife in the Borough of Clinton, Schuylkill County.

The facts are set forth in the opinion of PALMER, J., who heard the case and from which we quote as follows: "The mother of the child and first wife of the relator died on the 4th day of September, 1930, when the child was twenty days old; and at the request of Mr. and Mrs. Williams the son was permitted by the father to remain in their custody.

"At the time of the death of the child's mother, the father was engaged in the garage business in Port Clinton, and after her death, he sold this business and later moved to Pottsville.

"On January 27, 1932, the relator remarried, and at the time of the hearing on this writ was living with his wife at the Y. W. C. A. house located at Sweet Arrow Lake, this County, where he had obtained a position; the money remuneration and other incidentals or perquisites attached thereto, enabling him to properly support his wife and son. Prior to this employment, he had pursued the trade of automobile mechanic and was capable in normal times of earning fifty or sixty dollars a week.

"The evidence also shows that the grandfather is capable of supporting this child.

"There were some contradictions in the testimony as to the frequency of the visits of the father to his son and his general behavior towards his father-in-law and the Williams' family treatment of him, but these facts are trivial and of no importance in the matter of determining the ability of the contesting parties to care for this child.

"The father is twenty-nine years of age his wife younger. Mr. and Mrs. Williams are considerably older. (The former is aged 56 and the latter 54.)

"The father of the child, his wife and the grandparents are shown to have excellent reputations by the evidence; and we are convinced that they are persons of character. There are no disputes relative to the religious training of the child."

Both the relator and his wife are active in church work and in the Sunday school.

Following the remarriage of relator, relations with the child's grandparents became more and more strained.

The father did not contribute anything to the support of his child while the latter was with the grandparents, but it does not appear that the latter requested any payment therefor.

The second wife of relator is a young woman of excellent reputation, aged 23 years, and apparently anxious that her husband should obtain possession of the child, she herself being very fond of it.

After hearing, the court awarded custody of the child to its father. By agreement between counsel, the order was revoked in order to afford the court an opportunity to write an opinion. The final order awarding the child to the custody of its father was made on February 26, 1934. From that order this appeal was taken. Subsequently the appeal was made a supersedeas.

The testimony does not disclose any abandonment of the child by his father. Immediately following the death of his wife, the father intended to take the child to the home of his, relator's, father. His father, however, was living with relator's sister, and there were several children in the household. He was left with his grandparents as a result of the circumstances surrounding his mother's death. Necessity and the welfare of the young baby at that particular time were the actuating causes for leaving the child with the grandparents.

In cases like this, the paramount consideration is the best interest and permanent welfare of the child: Com. ex rel. Welsh v. Welsh, Appellant, 96 Pa. Superior Ct. 426, 429 (citing Com. ex rel. Bloomfield v. Faxstein, 84 Pa. Superior Ct. 243; Com. v. Mauch, Betz Appeal, 91 Pa. Superior Ct. 220; Com. ex rel. Miller v. Barclay et ux., Appellants, 96 Pa. Superior Ct. 315). In this case the court stated, at page 429, that "The general rule is that the father is entitled to the custody of his infant children, that right growing out of his obligation to maintain and educate them: Heinemann's Appeal, 96 Pa. 112; Com. v. Mauch, supra. In Heinemann's Appeal the court said that this right 'is not on account of any absolute right in the father, but for the benefit of the infant, the law presuming it to be for its interest to be under the nurture and care of its protector, both for maintenance and education.' But Mr. Justice FELL said in Com. ex rel. Parker v. Blatt, 165 Pa. 213, that 'the legal right of the parent to the custody, care and companionship of his children is not to be interfered with, except for the most substantial reasons affecting their welfare'." To same effect see Com. ex rel. Fell v. Brown, 100 Pa. Superior Ct. 353; also Com. ex rel. Ganster v. McGee, 103 Pa. Superior Ct. 12, 157 A. 345. The real question in this case, therefore, is whether the presumption in favor of the father, and present relator, is overthrown by the evidence presented.

Under the Act of July 11, 1917, P. L. 817, it is our duty in reaching a decision to review carefully all the testimony to determine the merits of the case as to right and justice shall belong.

Quoting the language from the opinion of our Brother CUNNINGHAM in Com. ex rel. Welsh v. Welsh, supra, on p. 430: "We are not unmindful of the fact that the grandparents have become so deeply attached

to the child that it will be a real hardship to be deprived of his society. Doubtless their desire to retain his custody is strengthened by the fact that his mother expressed the wish shortly before her death, that if anything should happen to her she would like her mother to have the custody of the boy. We cannot, however, permit sympathy for the grandparents to interfere with the best interest and future welfare of the child. While there may be little difference in the physical and material conditions in the two homes and in the financial ability of the respective parties to support and educate the child, the right of the father to the custody of his own child, all other considerations being equal, should incline the scale in his favor in weighing the evidence on the question of the child's best interest and permanent welfare."

After a careful consideration of the entire testimony, and governed by the principles discussed supra, we are of the opinion that the lower court arrived at a correct conclusion.

The assignment of error is overruled and the decree of the lower court is affirmed. Costs to be paid by appellant.