Commonwealth ex rel. Edinger *v.* Edinger, Appellant.

Argued October 1, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*I. Emanuel Meyers,* with him *Solomon Hurwitz* and *Hurwitz, Klein & Meyers,* for appellants.

*Arthur Berman,* with him *Samuel Handler* and *Compton, Handler & Berman,* for appellee.

OPINION BY HIRT, J., November 12, 1952:

In this habeas corpus proceeding the lower court awarded custody of two minor children, ages 8 and 5, to their mother, the relatrix, subject to the right of respondent their father, Vance Whitney Edinger, to have the children for 7 hours each Saturday and for the period of two weeks each year in the month of August. Both the home of relatrix, with her widowed mother, and the home of the husband's parents where he would maintain the children are suitable places and both parents have affection for their children. In general the needs of children of tender years are best served by their mother. But the right of a mother to custody of young children is not absolute; it must yield to their best interests and welfare. *Com. ex rel. Swartzwelder v. Swartzwelder,* 162 Pa. Superior Ct. 366, 57 A. 2d

610.  With much reluctance we in the performance of our duty are bound to say that there is a single but compelling reason for a reversal of the order.

Vance Whitney Edinger married the relatrix in November 1943 after his induction into the Air Force. They lived together for but two months when he was sent overseas as a fighter pilot.  A son was born in August 1944 during his absence.  Following his return in May 1945, and his subsequent discharge, they lived together in Middletown, Pennsylvania.  The relatrix testified that their marriage disintegrated because of her husband's unsympathetic attitude toward her; and that her husband's conduct coupled with the shock of the sudden death of her father induced the premature birth of her second son in April, 1947.  Two months later she became mentally deranged and was then committed to the State Hospital in Harrisburg on the certificate of two physicians.  She was discharged on October 28, 1948 and has not had a recurrence of a manifestation of her mental illness.  Since then she has made her home with her mother.  She obtained a court order on her husband for her partial support and informally was given the right to have the children for three hours every Sunday when accompanied by a responsible person.  Under this arrangement she has seen the children not more than ten times.  She says that she stopped going to her husband's home to get the children because of the upsetting effect on her of his hostile attitude toward her.  She had not attempted to see her children for two years prior to the hearing in this case.

Relatrix has had various employment following her discharge from the hospital, and continuously since August 1949 she has held a responsible position at the Middletown Air Depot without evidencing any indication of mental instability.

The insurmountable fact in the way of an affirmance of the order is the seriousness of relator's mental illness. The type of her insanity was paranoid schizophrenia. Tragedy not uncommonly results from the involuntary acts of such paranoiacs. A permanent cure may be possible in such cases, regardless of differences of medical opinions on the subject, but the evidence in this case does not establish that relatrix may not suffer a recurrence of the disorder.

It must be conceded that expert medical testimony is necessary to a decision in this case. For relatrix Dr. Hamblen C. Eaton, a physician specializing in psychiatry testified that as Clinical Director of the Harrisburg State Hospital, relatrix came under his observation following her commitment. He had not seen her from October 25, 1948 when she was discharged from the hospital until about one month before the hearing in this case. In response to questioning as to whether she "would be a safe risk to have her children at this time exclusively" he testified: "That is a hard question to answer categorically. I would say, on the basis of what I saw and when I talked to her, and what I have seen this morning on the stand, she has regained a state of emotional stability that I didn't believe was possible in the fall of 1948. As I saw her a month ago and as I see her today, I think there would be no risk in her taking the children at this time. We always have the problem in any case where we had mentally ill patients, of not knowing what the future holds. But if I had to answer it, is she particularly able to look after the children today, I would say yes". He qualified his answer however by stating further: "No one of us knows what stress we are going to meet tomorrow . . . I can't predict the future". On the other hand Dr. Herbert E. Heim, also a qualified physician with psychiatry as his specialty, who examined her and

signed her commitment papers in 1947, testified that because of the improvement in her condition: ". . frankly I would find it hard to recognize the same person", but he nevertheless said: "I feel that the likelihood of a recurrence of illness is so great that I would not personally recommend" that she be entrusted with the care of the children. In the appraisal of this expert medical testimony our reaction is the same as in *Com. ex rel. Crilley et al. v. Laird*, 160 Pa. Superior Ct. 132, 50 A. 2d 542. Any order in this case will be prospective; it must be addressed to the best interests of the children in the future as well as in the immediate present. And on this testimony no court should be asked to accept the responsibility of saying that there would be no danger of recurrence of relatrix's mental disorder on setting up a home and caring for her children, in addition to continuing in her employment, as to which she has made a satisfactory adjustment.

Dr. Eaton recognized the value to all concerned of relatrix becoming reacquainted with her children and he suggested (we assume as an alternative) that this might be accomplished by giving her limited custody during her available weekends. We see no objection to such disposition of the case provided conditions are imposed in the order which will provide reasonable safeguards for the safety and welfare of the children. The lower court, of course, will insist upon the full cooperation of the respondent father in the performance of such order if made.

Order reversed and the case is remitted to the lower court for further proceedings and an order not inconsistent herewith.

---

DISSENTING OPINION BY RENO, J.:

The evidence has firmly persuaded me that appellee has completely recovered. Her employment record is

tremendously significant. Starting in 1949 at $2450 per annum in a civil service position, she has been promoted four times and now receives $3030. Add to this, only those portions of the testimony of the experts quoted by the majority (disregarding the huge mass of other indubitably favorable evidence in the record), and you have incontrovertible proof that this mother now has absolute control of her mental faculties. Of course, the experts would not venture a prediction, not any more than this dissenter's physician will guarantee continued physical or mental health beyond several hours after an examination. If this Court waits until a reputable physician categorically certifies that appellee will never experience a recurrence of her ailment, it will wait forever and a day. Meanwhile, her children will be in the custody of a father whose fitness is questionable.

I would affirm the order of the court below upon the impressive opinion of Judge SOHN.

Judge ROSS joins in this dissent.