## Commonwealth ex rel. Sabath *v.* Mendelson, Appellant.

Argued June 19, 1958. Before RHODES, P.J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

Before BELOFF, J.

*Nochem S. Winnet,* with him *Edward L. Frater,* and *Fox, Rothschild, O'Brien & Frankel,* for appellant.

*Joseph Sharfsin,* with him *William A. Goichman,* for appellee.

OPINION BY WRIGHT, J., July 31, 1958:

We are here concerned with a controversy involving the custody of Nancy Ellen Sabath, aged ten years. The contesting parties are Dan O. Sabath, the natural father, and Herbert H. Mendelson, a brother of the child's deceased mother. On March 27, 1958, the court below entered an order awarding custody to the father,

and granting liberal visitation rights to the Mendelson family. Included in the order, inter alia, was a requirement that the father file a compliance bond. The maternal uncle immediately appealed. After hearing argument, all of this on the same day, we granted a supersedeas.

Following the marriage of Dan O. Sabath and Lita Mendelson, they lived in Chicago where Nancy Ellen was born on October 14, 1947. At that time the parents were aged, respectively, 24 and 18 years. They were divorced on July 7, 1950. The divorce decree provided that the mother was to have custody of the child and that the father was to pay $15.00 each week for the child's support and also to care for her medical expenses. Early in 1951 the mother moved with the child to California. On June 17, 1951, the father remarried. On December 5, 1957, the mother ended her life, leaving a note directing that the child was "to be with my brother Herbert". Appellant thereupon flew to California and brought Nancy back to his home in Philadelphia. The father promptly demanded custody. After first agreeing that the father should have the child, appellant later refused to release her.

Appellant states the question involved to be as follows: "Where the evidence indicates that a child of divorced parents has for seven of her ten years been identified with the maternal side of the family, and in accordance with the dying wish of her mother, her brother took custody of the child, should the custody be changed and awarded to the father who has seen the child but once in seven years, who lives in a different city and has married out of the faith in which the child was reared". The counter-statement of the question involved as submitted by appellee is as follows: "Did the Court below act within its discretion in awarding custody of a ten-year old daughter to her natural father as

opposed to the maternal uncle, who had not seen the child for four years preceding the instant controversy, who had resided with the child since his marriage for only three months in the child's entire life, who has been divorced once, has two other children, and who himself intends to move to New York City in the near future, in view of the fact that the natural father is married to a school teacher and is amply able, competent and desirous of bringing up his own child".

The relevant legal principles are well settled and need not be here restated in any detail. The paramount consideration is the welfare of the child and all other factors are subordinate: *Commonwealth ex rel. Mitchell v. Mitchell*, 186 Pa. Superior Ct. 347, 142 A. 2d 304. While each case must finally rest on and be determined by its own facts, *Commonwealth ex rel. Kraus v. Kraus*, 185 Pa. Superior Ct. 167, 138 A. 2d 225, the general rule is that a father is entitled to the custody of his child as against one who is not its parent, and his right is so moving and cogent that it is forfeitable only by misconduct or other factors which substantially affect the child's welfare: *Commonwealth ex rel. Thompson v. Altieri*, 184 Pa. Superior Ct. 431, 135 A. 2d 811.

The record discloses that each party is financially able to properly support the child, and that the physical facilities possessed by each for her upbringing are reasonably equal. Appellant concedes that these two factors may be eliminated from our consideration. He rests his claim to custody primarily on the basis that Nancy's "roots" are in the Mendelson family. Dr. Norman Nixon, a child psychiatrist and Director of the Child Study Center, testified as to Nancy's "identification" with the Mendelson side of the house, and that her father was merely "on the fringe" of her life. On the other hand, Judge Beloff found that the father had "an affectionate and deep fatherly attachment for his

daughter", and had supported the child to the best of his ability. Furthermore, he was satisfied with the father's explanation, in addition to the considerations of distance and expense, of his failure to contact the child more frequently prior to the mother's death.[1]

In his opinion Judge Beloff states: "The Petitioner's testimony and manner on the witness stand impressed the court favorably. There is no question as to his suitability to rear his child". He was also "very much impressed" by the present Mrs. Sabath. After talking privately with the child, he placed on the record a feeling of "tremendous relief to me in this sense in that I think that the child would not be unhappy in either place". He found that the father had not abandoned the child and that there was no compelling reason to deny him her custody. His opinion concludes with a statement of the firm conviction "that the welfare of the child will be best safeguarded in the custody and care of her father".

Appellant cites a number of cases wherein it was held that custody should remain with someone other than the natural parent. See *Commonwealth ex rel. Shamenek v. Allen,* 179 Pa. Superior Ct. 169, 116 A. 2d 336; *Commonwealth ex rel. Shroad v. Smith,* 180 Pa.

---

[1] "All I can say is this; there are times when you love someone so much that you give them up rather than inflict more emotional conflict upon them. When her mother died, certainly no other thought entered into my mind, except to have her. All the love stored up for six years selfishly depriving myself, ended, and I couldn't go along like that any more . . . It is difficult for anyone who has not had this torment and anguish. I can think of no other word for it. Everything I have done in my relationship to this child, I did because I was doing what I thought was right. I still think it is right. There comes a time when you can't do it any more. There comes a time to stay and a time to run and a time to live and a time to die, and I couldn't under the circumstances stay away any more".

Superior Ct. 445, 119 A. 2d 620; *Commonwealth ex rel. McDonald v. McDonald,* 183 Pa. Superior Ct. 411, 132 A. 2d 710; *Commonwealth ex rel. McNamee v. Jackson,* 183 Pa. Superior Ct. 522, 132 A. 2d 396; *Commonwealth ex rel. Newel v. Mason,* 186 Pa. Superior Ct. 128, 140 A. 2d 365. These cases have one important circumstance in common, namely, that the child had been in the custody of persons other than the natural parent for a period of years, and was well adjusted in the existing family situation. See our discussion of this factor in *Commonwealth ex rel. Kraus v. Kraus,* supra, 185 Pa. Superior Ct. 167, 138 A. 2d 225. An examination of the cited cases will reveal other distinguishing features not present in the instant record.

Appellant also argues that Nancy has been brought up in the Jewish faith, and that both he and his wife are affiliated with a Jewish synagogue and will rear the child in the faith of her ancestors. While religious training is more important than the particular faith, *Commonwealth ex rel. Donie v. Ferree,* 175 Pa. Superior Ct. 586, 106 A. 681, preference should of course be given, if possible, to the faith in which the child received early training. However, this factor cannot be seriously in dispute in the case at bar. Nancy's father is of the Jewish faith and there is adequate opportunity for Nancy to attend a Jewish synagogue in Chicago with paternal cousins of her own age. While the present Mrs. Sabath is a protestant, she testified that she would "cooperate to the fullest extent". Moreover, the order of the court below was expressly conditioned upon the requirement that "the child is to be raised in the religious faith of her deceased mother and that which her father professes".

It is against public policy to destroy or limit the relation of parent and child: *Commonwealth ex rel. Fortunes v. Manos,* 140 Pa. Superior Ct. 352, 13 A. 2d

886. And see *Leonard v. Leonard,* 173 Pa. Superior Ct. 424, 98 A. 2d 638. Our review of this record clearly establishes that the relevant legal principles were properly applied to the facts as found by the hearing judge. See *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A. 2d 350. His memorandum at the conclusion of the hearing and his persuasive opinion evidence thorough study and sympathetic consideration. Appellant has entirely failed to convince us that his conclusion should be disturbed.

Order affirmed.