Commonwealth ex rel. Lees, Appellant, v. Lees.

Argued June 14, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

 Before
BROWN, J.

*John R. Sutton,* for appellant.

*David E. Thomas,* with him *John Stewart, Jr.,* and *Raspin, Espenshade, Heins, Erskine & Stewart,* for appellee.

OPINION BY WRIGHT, J., September 12, 1961:

We are here concerned with a controversy involving the custody of Joseph J. Lees, presently aged eleven years, the son of James J. and Marie K. Lees. The child's mother is dead and the contesting parties are the child's father and a maternal uncle, Lawrence J. Kieffer. There were two petitions filed in the court below, one by the father for habeas corpus, and one by the uncle for custody. These actions were consolidated, and the hearing judge took testimony on both petitions at the same time. On September 26, 1960, an order was entered awarding custody of the child to the father. The uncle has appealed. There was no supersedeas, and we were informed at oral argument that the child has been in the father's custody since the date of the order below.

James J. Lees and Marie E. Kieffer were married on September 21, 1940. They had three children as follows: James, born March 14, 1941; John, born March 4, 1945; and Joseph, born June 15, 1950. The parents separated shortly after Joseph's birth. A property settlement agreement was executed by virtue of which the mother was given title to the home and took custody of the three children, for whom the father was to pay support in the amount of $50.00 per week. The father obtained a divorce and remarried. Marie K. Lees died

34

on July 28, 1959. James J. Lees promptly sought custody of the three children, who were then staying temporarily at the home of their maternal uncle, Lawrence J. Kieffer. John Lees went to live with his father, but James and Joseph remained with the uncle. The dispute over Joseph's custody culminated in the appeal presently under consideration.

It should be noted that, following the separation, the father visited his three children from time to time, brought them gifts, and took them on vacations in the summer. He also kept up the support payments to a substantial extent. While appellant states that Joseph "was practically a stranger to his father", there is nothing in the record to support a finding of abandonment. In the words of the hearing judge: "The facts in this case certainly do not warrant a finding of abandonment and we find no abandonment to exist here".

It should also be noted that there is no contention that James J. Lees is not a fit father. He is regularly employed at a substantial salary. At the time of hearing he resided in Riverside, New Jersey, but anticipated a transfer to Downingtown, Pennsylvania. Similarly, there is no issue raised as to appellant's fitness to have the child. As stated by the hearing judge: "There is homes. The fine home environment and conditions, the no question or controversy as to the suitability of both love of this child and solicitude for his welfare are also conceded by both parties. The good care the child would be given is assured in both homes, for the wives of both the petitioner and respondent are capable, devoted and full-time housewives. ... There is, therefore, no question as to the competency and suitability of both parties to rear this child. Their homes are equally good; their financial status about the same. They are all people of good character and respectability".

Appellant raises three contentions on this appeal. The first is simply a restatement of the controlling

principle applicable to all cases involving the custody of children, namely, that the paramount consideration is at all times the welfare of the child, which includes its physical, intellectual, moral and spiritual well-being, and all other considerations are subordinate. The only case cited is *Commonwealth ex rel. Kuntz v. Stackhouse*, 176 Pa. Superior Ct. 361, 108 A. 2d 73. That decision, involving a contest between a grandmother and a maternal aunt, with the background of a brutal murder, can furnish no precedent for the situation in the case at bar. As already indicated, neither contestant has superior home conditions, nor does appellant contend otherwise. His argument is grounded on the premise that Joseph is more closely identified with the Kieffer family. However, he concedes that the "closeness and devotion Joseph felt for the respondent and his family can only be speculated upon at this point since the record is barren of any testimony on this issue". Our independent reading of the record reveals no basis upon which we may assume any predominant attachment or devotion on Joseph's part for either family.

Appellant also argues that a father's prima facie right to the custody of his child may be forfeited if convincing reasons appear that the child's best interests may be served by someone else. He cites, inter alia, *Commonwealth ex rel. Burke v. Birch*, 169 Pa. Superior Ct. 537, 83 A. 2d 426; *Commonwealth ex rel. Boschert v. Cook*, 122 Pa. Superior Ct. 397, 186 A. 229; and *Commonwealth v. Mauch*, 91 Pa. Superior Ct. 220. The factual situation in each of those cases differs materially from that in the case at bar. It is a well recognized principle that a parent is ordinarily entitled to the custody of his minor child, and this right will not be interfered with except for the most substantial reasons affecting the child's welfare: *Commonwealth ex rel. Keenan v. Thomas*, 151 Pa. Superior Ct. 131, 30 A. 2d 246. Appellant has failed to demonstrate any com-

pelling reason why there should be an exception to the rule in the case at bar. Briefly summarized, his argument is that Joseph has received the best of care and moral training in the Kieffer home; that the Kieffers are purchasing a new home in which Joseph will have a separate bedroom, "as well as other advantages which may be realized from being raised in an exclusive suburban community"; and that they are in position to continue raising Joseph in an atmosphere of devotion and familiarity. While all this is exemplary and speaks well for appellant's household, it in no way constitutes a substantial reason for depriving the father of his right to custody. See *Commonwealth ex rel. Thompson v. Altieri*, 184 Pa. Superior Ct. 431, 135 A. 2d 811.

Finally, appellant argues that the preference of the child should be carefully considered. Many cases have endorsed this consideration as one of the factors to be weighed in determining custody. However, the child's preference must be based on good reason, and it is not necessarily controlling: *Commonwealth ex rel. Stevens v. Shannon*, 107 Pa. Superior Ct. 557, 164 A. 352. Appellant makes the following statement: "In numerous cases heard by this court, where the preference of the minor was one of the factors presented, parents were unsuccessful in their efforts to secure custody, and the wishes of the children found support and approval". Without burdening this opinion with a discussion of the cases cited seriatim,[1] we will simply emphasize that, in each of them, the child had been in the custody of

---

[1] *Commonwealth ex rel. Weber v. Miller*, 84 Pa. Superior Ct. 409; *Commonwealth ex rel. Brown v. Lane*, 90 Pa. Superior Ct. 350; *Commonwealth ex rel. Denny v. Murdock*, 94 Pa. Superior Ct. 59; *Commonwealth ex rel. Tyrrell v. Tyrrell*, 115 Pa. Superior Ct. 385, 175 A. 723; *Commonwealth ex rel. Trott v. Wilcox*, 118 Pa. Superior Ct. 363, 179 A. 808; *Commonwealth ex rel. Shamenek v. Allen*, 179 Pa. Superior Ct. 169, 116 A. 2d 336; *Commonwealth ex rel. Shroad v. Smith*, 180 Pa. Superior Ct. 445, 119 A. 2d 620.

persons other than the natural parent for a considerable period of time ranging up to twelve years, and was well adjusted in the existing family situation. See our discussion of this important circumstance in *Commonwealth ex rel. Kraus v. Kraus,* 185 Pa. Superior Ct. 167, 138 A. 2d 225. In the case at bar, prior to his mother's death, Joseph resided with the Kieffers for only a few weeks. Moreover, the present record does not actually disclose any statement of Joseph's preference. While the hearing judge interviewed the boy in chambers, we do not have the benefit of what transpired at that time. Apparently no strong preference was indicated either way.

In conclusion, appellant concedes that "the burden on appeal is upon the appellant to establish that the order of the lower court is erroneous or based on a mistake of law". See *Commonwealth ex rel. Wagner v. Wagner,* 193 Pa. Superior Ct. 40, 163 A. 2d 708. We are unanimously of the opinion that appellant has failed to sustain this burden in the case at bar. In our view, the present appeal is ruled by the markedly similar case of *Commonwealth ex rel. Sabath v. Mendelson,* 187 Pa. Superior Ct. 73, 143 A. 2d 665. There, as in the instant case, appellant's real argument was that the child's "roots" were in the maternal side of the family. In affirming an award of custody to the father, we stated: "It is against public policy to destroy or limit the relation of parent and child: Commonwealth ex rel. Fortunes v. Manos, 140 Pa. Superior Ct. 352, 13 A. 2d 886. And see Leonard v. Leonard, 173 Pa. Superior Ct. 424, 98 A. 2d 638. Our review of this record clearly establishes that the relevant legal principles were properly applied to the facts as found by the hearing judge".

Order affirmed.