Commonwealth ex rel. Snapir *v.* Snapir,
Appellant.

Argued June 16, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before KALLICK, J.

*Yale B. Bernstein*, with him *Michael H. Egnal*, for appellant.

*Charles Basch*, with him *Charles R. Weiner*, for appellee.

OPINION BY WRIGHT, J., September 12, 1961:

We are here concerned with a controversy involving the custody of Israel Snapir, presently aged five years, the son of Maurice and Saundria Snapir. The case has a long procedural history, including three petitions for habeas corpus and a citation for contempt. Testimony was taken at nine hearings, and there is a voluminous original record. The ultimate disposition below was an order on March 17, 1961, awarding custody to the maternal grandparents, Meyer M. and Anna Trivus, with whom the child's mother resides. The father has appealed.

Maurice Snapir and Saundria Trivus were married on February 15, 1955. At that time Saundria was the mother of an illegitimate child, Frederick Morrison, of whom Maurice is not the father. Frederick lives with his mother in the Trivus home, and his custody is not

involved in this appeal. Israel, the child with whom we are presently concerned, was born on December 12, 1955. In the summer of 1957, a separation occurred. Saundria asserted that Maurice was physically abusive and told her to leave. Israel remained with his father in the home of the paternal grandparents, Rabbi Joseph Snapir and his wife, Leah. Saundria returned to the home of her parents.

The instant proceeding had its inception on May 6, 1958, when Saundria filed a petition for a writ of habeas corpus. After hearing on August 13, 1958, Israel's custody was temporarily awarded to Saundria, and both parties were referred for psychiatric examination. It should be here noted that Saundria had been hospitalized in 1954 for schizophrenic reaction, heberpherenic type. She was discharged from the Philadelphia Psychiatric Hospital as fairly well adjusted. Following the separation, she was again hospitalized for the same affliction from December 25, 1957 to April 18, 1958. It was because of the possibility of recurrences that full custody was not awarded to the mother. The record also clearly discloses that the father is not of stable mental condition, and the hearing judge found that he was unfit to have the child.

On August 27, 1958, there was a further hearing, following which custody of Israel was continued with the mother and the father was granted visitation rights of one hour every other day. This visitation program caused frequent clashes and, at a hearing on January 22, 1959, the father's visitation rights were changed to certain weekends.

On May 18, 1959, Saundria was committed to the Psychiatric Division of the Philadelphia General Hospital, where she remained approximately four months. Maurice immediately filed a petition for writ of habeas corpus asking full custody of the child. After a hearing on June 12, 1959, he was granted temporary cus-

tody, although it was apparent that the child did not want to go with the father. The court stated at that time that the father's feeling was "so intense that I do not think it is good for him or the boy". On October 26, 1959, following Saundria's release from the hospital, there was a further hearing at which time custody was continued in the father and the mother was granted weekend visitation rights.

On November 1, 1959, in flagrant violation of the court order, the father took Israel outside of Pennsylvania. The child was finally located in New York City on July 23, 1960, and returned to the home of the maternal grandparents. During the intervening period, Maurice and the child had lived in cheap hotels, lodging and rooming houses, not only in New York, but also in Camden, Jersey City, and Montreal, Canada. To avoid detection Maurice used the name "Sanfir". Despite the fact that his parents eventually learned of Maurice's whereabouts, they did not cooperate in furnishing this information to the court.

In the meantime, November 12, 1959, Saundria had filed a petition for a contempt citation. Following the father's apprehension on July 27, 1960, he posted cash bail for hearing. At the hearing on August 3, 1960, the matter was continued and the hearing judge suggested that a petition be filed requesting that custody be formally awarded to the maternal grandparents. At a continued hearing on August 24, 1960, Maurice was adjudged in contempt and a suspended sentence was imposed. He was found to have a detrimental influence over the child, and unworthy of having custody. At the hearing counsel for Saundria presented a petition asking that custody be awarded to Saundria and her parents. The hearing judge continued custody in the maternal grandparents and directed that, because of his conduct, the father should have no visitation rights.

On October 6, 1960, an order was entered that the father should have visitation rights at the nursery of the Municipal Court from 2:00 to 4:00 p.m. on Sundays. Further testimony was taken on December 9, 1960, at which time the hearing judge referred to the father's condition of instability, his disrespect for the law, and the failure of his family to cooperate with the court. At the conclusion of that hearing the case was again continued for a final hearing on February 10, 1961. Thereafter the order was entered which has resulted in this appeal.

Appellant here advances the following contentions: "1. The mother of the child is suffering from schizophrenia and is incompetent. 2. A father is entitled to custody against one who is not the child's parent unless forfeited. 3. The child's welfare will be promoted if custody is awarded to his father". These contentions may be treated together as, in sum, they raise the same question.

The paramount consideration in custody cases is the welfare of the child, which includes its physical, intellectual, moral, and spiritual well being, and all other considerations are subordinate: *Commonwealth ex rel. Lees v. Lees,* 196 Pa. Superior Ct. 32, 173 A. 2d 691; *Commonwealth ex rel. Johnson v. Johnson,* 195 Pa. Superior Ct. 262, 171 A. 2d 627. One need only read this record to agree with the hearing judge that custody should not be awarded to the father. It is true that the mother suffers from schizophrenia. However, when she is not hospitalized, she is at home with the child and able to assist in its care. It should be noted that the Trivus home is concededly suitable and adequate. We may also remark at this point that religion is not a factor, as all parties are practicing members of the Jewish faith.

Appellant cites *Commonwealth ex rel. Edinger v. Edinger,* 172 Pa. Superior Ct. 93, 92 A. 2d 230, and

*Commonwealth ex rel. Crilley v. Laird,* 160 Pa. Superior Ct. 132, 50 A. 2d 542, wherein custody was denied a mother who had a history of mental illness. There are distinguishing features in each of those cases. In neither was there any question of the fitness of the father or paternal aunt, respectively, to have custody. Furthermore, custody in the instant case was not awarded to the mother, but to the maternal grandparents with whom the mother resides. As stated in the opinion below: "The child appears to be well adjusted in the family situation that exists in the home of his maternal grandparents. It is not improbable that at some future time, we hope not too far off, the child's mother may be well enough to be able to assume his full custody".

Appellant cites a number of cases[1] in support of his argument that the father is entitled to custody as against contesting parties other than the mother. However, as we pointed out in *Commonwealth ex rel. Sabath v. Mendelson,* 187 Pa. Superior Ct. 73, 143 A. 2d 665, the right of a father to custody may be forfeited by misconduct or other factors which substantially affect the child's welfare. See also *Commonwealth ex rel. Bendrick v. White,* 403 Pa. 55, 169 A. 2d 69; *Commonwealth ex rel. Shamenek v. Allen,* 179 Pa. Superior Ct. 169, 116 A. 2d 336; *Commonwealth ex rel. Shaak v. Shaak,* 171 Pa. Superior Ct. 122, 90 A. 2d 270; *Commonwealth ex rel. Rockey v. Hoffman,* 91 Pa. Superior Ct. 213. Furthermore, as previously indicated, the mother is still a definite factor in this case. In the

---

[1] *Commonwealth ex rel. Fell v. Brown,* 100 Pa. Superior Ct. 353; *Wanner v. Williams,* 117 Pa. Superior Ct. 59, 177 A. 329; *Commonwealth ex rel. McTighe v. Lindsay,* 156 Pa. Superior Ct. 560, 40 A. 2d 881; *Commonwealth ex rel. Booth v. Jones,* 170 Pa. Superior Ct. 617, 89 A. 2d 362; *Commonwealth ex rel. Thompson v. Altieri,* 184 Pa. Superior Ct. 431, 135 A. 2d 811.

final analysis, each decision must rest on and be governed by its own factual situation: *Commonwealth ex rel. Kraus v. Kraus,* 185 Pa. Superior Ct. 167, 138 A. 2d 225.

Counsel for appellant has devoted a considerable portion of his brief to the proposition that the father is actually a fit and proper parent and is not guilty of any misconduct, and that an award of custody to the father would not be detrimental to the child. A sufficient answer lies in the father's mental instability, unreliability, and emotional immaturity. We cannot, as the hearing judge could not, overlook the action of the father in taking this young child out of the jurisdiction and keeping him secreted from family and relatives under the most adverse conditions for a period of many months. Appellant argues that his contempt is irrelevant to the issue. However, as pointed out in *Commonwealth ex rel. Schofield v. Schofield,* 173 Pa. Superior Ct. 631, 98 A. 2d 437, the action of a parent in violating a court order may well have a bearing upon his or her fitness to be awarded custody. See also *Commonwealth ex rel. Scholtes v. Scholtes,* 187 Pa. Superior Ct. 22, 142 A. 2d 345.

Appellant asserts that the hearing judge based his award of custody on the fact that the child evidenced fear of and aversion to his father. Our examination of the opinion below does not indicate that the order was based solely on this one factor, although the hearing judge did state, and we think properly, that "the child showed evident fear of his father, and recoiled, screaming and carrying on, whenever he was directed to go to him". Appellant adduced the testimony of a psychiatrist to the effect that the child's fear reaction may have been caused by the conduct of the mother and maternal grandparents. The differences between the parties undoubtedly have contributed to the child's attitude. However, we are convinced that this situation

would not be improved by awarding custody to the father.

Appellant's final contention is as follows: "4. The court below relied on evidence outside of the record". The gravamen of this complaint is that at the hearing of December 9, 1960, reference was made to a report submitted by a court psychiatrist, Dr. Nicholas G. Frignito. This report does not appear in the record. However, the notes of testimony indicate that it was submitted for perusal by the father's attorney, and the hearing judge offered to call the witness and subject him to cross-examination. While reliance on ex parte reports is not proper, *Commonwealth ex rel. Mathis v. Cooper,* 188 Pa. Superior Ct. 113, 146 A. 2d 158, it clearly appears that the hearing judge arrived at his determination independently, and there is ample testimony in the record to justify his decision without attributing any weight whatever to Dr. Frignito's report. We find no reversible error under the circumstances.

In conclusion, Judge KALLICK gave this case patient and thoughtful consideration over an extended period of time. His decision was based upon personal observation of the parties and their witnesses. See *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A. 2d 350. We are unanimously in accord with his conclusion that the interest and welfare of the child will best be served by continuing custody in the maternal grandparents. So far as visitation rights are concerned, as stated in the opinion below, they are to be adjusted "either by agreement of the parties or by order of the court".

Order affirmed.