## Commonwealth ex rel. Conrod *v.* Conrod, Appellant.

Argued October 11, 1949. Before RHODES, P. J., DITHRICH, ROSS, ARNOLD and FINE, JJ. (HIRT and RENO, JJ., absent).

*Henry Thomas Dolan,* for appellant.

*Dewey Hoffman,* for appellee.

OPINION BY DITHRICH, J., January 12, 1950:

In this habeas corpus proceeding the learned judge of the court below decided that the best interests and welfare of a boy of seven and a girl of five would be served by awarding their custody to the relator, their father.

Upon appeal it is the duty of this Court to "consider the testimony and make such order upon the merits of the case, either in affirmance, reversal, or modification of the order appealed from, as to right and justice shall belong." 1917, July 11, P. L. 817, §1, 12 PS §1874.

"Right and justice" in this case clearly require an affirmance of the order of the court below. We haven't the slightest doubt that if respondent had had her way the boy, Michael, would still be in St. John's Orphan Asylum, Philadelphia, and the girl, Margaret, would still be in St. Vincent's Home, Lansdowne, Pa., where she had placed them and where they remained from on or about September 10 to November 23, 1948. Relator, who was voluntarily contributing $15 a week for the

support of his children, first learned of their plight when he received notice of a hearing on a dependency petition which his wife had filed in the Juvenile Division of Municipal Court.

When the case was called for hearing November 23, 1948, relator appeared and informed the court that he was willing and able to support his children and requested their custody. Respondent then withdrew the dependency petition, the children were returned to her, and she subsequently placed the boy with her sister in Elizabeth, New Jersey, and the girl with her (the mother's) aunt in Philadelphia, where they still are, this Court having ordered that this appeal operate as a supersedeas. The mother does not live with either of the children, but testified that she sees the daughter each evening and the boy twice a month.

Relator, who was in the Marine Corps when he married respondent in San Diego, California, after living in crowded quarters in Philadelphia with his wife's relatives for two and one-half years, decided, since his health became impaired, that it would be better for all concerned if he and his wife and children went to live with his parents on their farm in Sturgis, Michigan. The home to which he will take the children and their mother, if she will only consent to leave the city and live on a farm, is a large modern house, containing five bedrooms, two bathrooms upstairs and a washroom downstairs, fully equipped with an oil-burning furnace and all modern electrical appliances.

We want to be absolutely fair to the mother of these children, but upon consideration of the whole record, including the opinion of the learned judge of the court below who saw and heard the parties, we cannot help but feel that she is placing her own convenience above the best interests and welfare of her children. The fact

that she placed them in separate orphanages without even consulting their father who was supporting them leads us to believe that her action was the result of a strong desire on her part to keep them near her, rather than send them to their father where they would be together in a comfortable home and under his control and supervision. In *Commonwealth ex rel. Fortunes v. Manos,* 140 Pa. Superior Ct. 352, 354, 355, 13 A. 2d 886, this Court said: "The best of institutions, however kindly and efficient its management is but an indifferent foster parent and, with rare exceptions, is not as productive of desirable results as the average home. The placing of a normal young child in an institution can be justified only as a temporary measure. All that an institution may provide cannot compensate for the loss of home life with his own family."

We are not impressed by the argument of counsel, made here for the first time, that the placing of the children in the institutions was only a "temporary expedient." As we have heretofore noted they were in the institutions for about two and one-half months, or until the father appeared in court and claimed their custody. They had only that day been brought from the orphanages to court, and it was not until after respondent had withdrawn her dependency petition and the children had been returned to her, that she placed the boy with the sister with whom she had formerly made her home and who had since moved to New Jersey, and placed the girl with the aunt, who was then, had been for some time, and still is living at 6632 N. Bouvier Street, Philadelphia.

We agree with the court below that "while it may technically be said that the mother has legal custody of the children, actually they do not reside with her, nor does she exercise care, supervision and control over

them such as a mother ordinarily would were they living with her.

"On the other hand petitioner-father offers the children a home with his parents where they would be subject to his care, supervision and control. We are not called upon to decide which of the parents is more to blame for the present failure of this marriage. We are concerned only with the welfare of their children. Com. ex rel. Gates v. Gates, supra [161 Pa. Superior Ct. 423, 55 A. 2d 562]. As between the rights of a father to the custody of the children and the care, supervision and control of relatives of the mother we believe the custody lies with the father."

Respondent further objects to the custody of the children being awarded to the father on the ground that he is a Protestant and would be taking the children to live in a Protestant home, whereas she is a Roman Catholic and the homes in which the children are now living are Catholic homes. In our opinion the mother is unduly concerned on that account, as the evidence shows that relator recognizes the ceremonial obligation he assumed when he and respondent were married to have the children brought up in the Catholic faith, and the court below found that "He is agreeable that the children be trained in the faith of their mother." He further testified that there is a Catholic church in close proximity to the home of his parents, a public school less than a mile away, and a parochial school in process of construction, thus affording ample facilities for the proper religious training of the children.

The order is affirmed.