Commonwealth ex rel. George *v.* George, Appellant.

Argued September 27, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Leighton R. Scott,* with him *Charles D. Hogan* and *Hogan & Scott,* for appellant.

*Jacob A. Raub,* for appellee.

OPINION BY ROSS, J., November 14, 1950:

This habeas corpus proceeding involves the custody of two children, Marie Ann George and George James George, now aged seven and five years respectively. Their parents are estranged, the mother (relatrix) having returned to Rhode Island, where she now resides, while the children have continued to live with respondent-father and paternal grandmother in Easton. Relatrix obtained an order in the Court of Common Pleas of Northampton County on July 6, 1950, awarding her the custody of the children, with specified privileges of visitation to the respondent. From this order respondent has appealed to this Court.

The parties were married in Providence, Rhode Island, in June 1942 and resided in that city about 15 months. Marie Ann was born during that period, and when she was about 3½ months old the parties moved to Easton, where they continued to live at various addresses until their separation in July 1946. During their married life, the parties and their children lived apart from various members of respondent's family for only about a year, and it is apparent from the record that the friction which developed between relatrix and her in-laws was a contributing factor toward the separation.

The burden is upon appellant to establish that the decree of the court below is, under the evidence, manifestly erroneous or based on a mistake of law. *Com. ex rel. Minnick v. Wilson,* 159 Pa. Superior Ct. 230, 48 A.

2d 27, *Com. ex rel. Williams v. Price,* 167 Pa. Superior Ct. 57, 74 A. 2d 668. Of course, the paramount consideration in cases of this nature is at all times the welfare of the child, which includes its physical, intellectual, moral and spiritual well-being, and all other considerations are subordinate *Com. ex rel. Self v. Self,* 153 Pa. Superior Ct. 443, 34 A. 2d 263; *Com. ex rel. Williams v. Price,* supra. This Court is not called upon to decide which of the parents is more to blame for the present failure of this marriage. We are concerned only with the welfare of the children. *Com. ex rel. Gates v. Gates,* 161 Pa. Superior Ct. 423, 55 A. 2d 562; *Com. ex rel. Conrod v. Conrod,* 165 Pa. Superior Ct. 628, 70 A. 2d 433. The fundamental question, the permanent welfare of the children, is the only one that calls for discussion. *Com. ex rel. McTighe v. Lindsay,* 156 Pa. Superior Ct. 560, 40 A. 2d 881.

No question is raised as to the moral fitness of either parent. As to financial ability and willingness to support the children : Relatrix testified that during the time in which the parties lived together, respondent's father provided them with a place to live and with clothing for the children, and this was corroborated by respondent. Relatrix testified further that she "didn't like the idea of his father supporting the children and myself", and wanted to be "not dependent on his brother or father", but respondent was content to accept support from his father, being unemployed from time to time, although the war was still on and there were "lots of jobs but he could never work at one job". The hospital bill, when the second child was born, was paid to a large extent with money she received from her brother in the army. In answer to the question, "Who supplied the food?" relatrix answered, "When we first moved here his father did, but it got so with his father's mother . . . that every time I would go to the refrigera-

tor to get food ready for the children she would start to swear and curse"; that thereafter relatrix worked and bought groceries with the money she earned, and that she cashed her insurance policy to buy food. On redirect examination she testified: "Q. If you had the children in Providence and your husband would pay for their support there, would you be able to stay home all day? A. All I want is the children. . . . I don't want anything from him. I can support them. Q. You can support them yourself? A. That's right, because I can sew, too. I don't want a penny from him." Further testimony revealed that the four-room house in Providence, which is occupied by herself, her father, sister and brother, is "comfortable", and that there will be room for the children; that she works at night, earns $60 a week, plans to take care of the children and will give them "daily care and attention", and "they will be with my father only two hours before my sister comes home" from her work. Respondent's home, where the children now live, was described by his family doctor as "an average Syrian home. . . . well kept. . . . The grand-mother seems to be caretaker and housekeeper."

Unless compelling reasons appear to the contrary, a child of tender years should be committed to the care and custody of its mother. *Com. ex rel. Keller v. Keller*, 90 Pa. Superior Ct. 357; *Com. ex rel. Gates v. Gates*, supra, 161 Pa. Superior Ct. 423, 55 A. 2d 562; *Com. ex rel. Graham v. Graham*, 167 Pa. Superior Ct. 470, 75 A. 2d 614. This is true although others who have been suitable custodians of the child have become attached to it. *Com. ex rel. Miller v. Barclay*, 96 Pa. Superior Ct. 315; *Com. ex rel. Lamberson v. Batylko*, 157 Pa. Superior Ct. 389, 43 A. 2d 364. Conceding, arguendo, that the home respondent now provides for the children has better physical aspects than the one to which relatrix plans to take them (a fact by no means established by the evidence), still the relatrix should not be deprived

of the custody of her children merely because a better home in physical aspects can be provided elsewhere. *Com. ex rel. Levinson v. Levinson,* 162 Pa. Superior Ct. 563, 59 A. 2d 625.

Respondent contends that relatrix, by leaving the children with him when she went to her parental home in Providence, abandoned them and, therefore, forfeited all further right to their custody. An examination of the record, however, discloses that she had ample reason for leaving. Relatrix testified, and respondent admitted, that he struck her, knocking her to the floor. She sustained internal injuries as a result of the blow, which caused her to hemorrhage for a month—this at a time when she was under a doctor's care. Further, that when she returned to Providence, she was in a highly nervous condition and was bedfast for "about a week". Respondent provided no home for his family apart from his relatives, including at various intervals his father, mother, brother, sister and grandmother. Relatrix testified that her mother-in-law told her that respondent's father would kill her if she attempted to take the children, and that his grandmother made a similar threat on her life if she were to return, telling her she would never see her children again. Under these circumstances, we believe relatrix was justified in leaving, and now that she has had time to recuperate and establish a suitable home for her children, no forfeiture of her rights to their custody intervenes to preclude her from so doing.

We agree with the reasoning of the learned trial judge when he says that "To presently remove the children to Providence, Rhode Island community, is to create a temporary shock" in their lives. However, the paternal grandmother is older than relatrix, and should she become incapacitated, "it is not impossible that the children would at such time have to go with their mother. The change might better be made now when the chil-

dren are of extremely tender years than at some future time when the children would be complete strangers to relatrix." The fact that relatrix may take the children from Pennsylvania to her home in another state to care for them is not controlling. *Com. ex rel. Black v. Black,* 79 Pa. Superior Ct. 409; *Pyles v. Pyles,* 157 Pa. Superior Ct. 450, 43 A. 2d 651.

Our independent study of the testimony in this case (*Com. ex rel. Lewis v. Tracy,* 155 Pa. Superior Ct. 257, 38 A. 2d 405) convinces us that the best interests and permanent welfare of these children will be served by committing them to the care and custody of their mother, and that there are no compelling reasons for us to hold otherwise.

Order affirmed.