## Commonwealth ex rel. Shaak, Appellant, *v.* Shaak.

Argued March 24, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*D. J. McTighe,* with him *William L. Huganir, Duffy, McTighe & McElhone,* for appellant.

*J. Stroud Weber,* for appellees.

OPINION BY ROSS, J., July 17, 1952:

This is a habeas corpus proceeding instituted by Mary T. Shaak, mother of Roberta Christine Shaak, to obtain custody of the child from Robert C. Shaak, a paternal uncle of the little girl. At the hearing in the Court of Common Pleas of Montgomery County, Roland H. Shaak, father of the child, was joined as a party respondent. The court below dismissed the petition and awarded custody to Robert C. Shaak with right of visitation to the parents, and from this order the relatrix, Mary T. Shaak, has appealed.

The relatrix and Roland H. Shaak were married on March 12, 1946 in Las Vegas, Nevada. Prior to her marriage relatrix had borne two illegitimate children. Roland H. Shaak was not the father of these children. The first child, LaDonna, born March 20, 1941, was kept by relatrix and was adopted by Shaak after his marriage to relatrix. The second child, born in February 1946, was "put out for adoption" by the relatrix because "I didn't see how I could take care of another child at that time".

Following their marriage the couple came to live with Shaak's father in his home at Bethel, Berks County, Pennsylvania. There they remained for only a month, at which time Shaak left for Panama to take

a job and relatrix went to live with her mother in Wichita, Kansas.

In December of 1946 the relatrix joined Shaak in Panama and he testified that shortly thereafter he noticed "symptoms of a disease", and, upon visiting a doctor, learned that he had a venereal disease. Shaak testified that his wife transmitted the disease to him. Relatrix, on cross-examination, admitted having a venereal disease when she went to Panama. On February 14, 1947, the child, Roberta Christine, was born.

Relatrix, Shaak and the child returned to Pennsylvania from Panama in May of 1950. They lived with Shaak's father until June, when all three went to Wichita. Shaak remained there for only a week and then returned to Pennsylvania to locate a home for his family. Shaak started to build a home in Fredericksburg and, when it was partially completed and "liveable", sent for relatrix and the child. The relatrix came east with the child. In ten days, after intercourse with his wife, Shaak found that he had again contracted a venereal disease. He accused his wife of transmitting the disease to him and she, according to her own testimony, did not deny it because "I was so mixed up". Relatrix testified that she told Shaak that she had had intercourse with another man before coming to Fredericksburg because "he would not have believed" that she hadn't "anyway".

This occurrence led to the final separation of relatrix and Shaak. At this time, in October 1950, they entered into a separation agreement by the terms of which relatrix was to have custody of the child La-Donna and Shaak was to keep Roberta Christine with him. Thereafter relatrix went alone to Wichita, where she presently resides, and Shaak remained in Pennsylvania with the child. Shaak took Roberta to a cousin, Lizzie Beshore, who kept her for a day or two. From there Shaak took her to another cousin, Irene Hoffman,

and finally in January of 1951, to his brother, Robert C. Shaak.

Roland Shaak testified that relatrix neglected the child and gave particular instances of such neglect. This testimony was corroborated by Lizzie Beshore, his father, Harvey C. Shaak, and by a neighbor, Mrs. Emma Ziegler.

Robert C. Shaak testified that he lives in Hatboro, Montgomery County, in a home owned by his wife's parents. The home is described as a modern brick structure having three bedrooms, bath, kitchen, dining room and living room. Shaak was, at the time of the hearing, 37 years of age. He was employed at the Johnsville Naval Base at a weekly wage of $80. His wife Wilma was, at the time of the hearing, 27 years of age and did not work. Both Shaak and his wife expressed a fondness for the child and a willingness to care for her. Roland H. Shaak at the time of the hearing lived in a room at a tourist home. He appeared completely unwilling to accept any responsibility for the care of the child.

It is our conclusion that the court below reached the only possible solution of this unfortunate situation and, accordingly, the order will be affirmed.

On appeal, in a child custody case, the burden is upon the appellant to establish that the order of the court below is, under the evidence, erroneous or based on a mistake of law. *Com. ex rel. Minnick v. Wilson,* 159 Pa. Superior Ct. 230, 48 A. 2d 27; *Com. ex rel. Williams v. Price,* 167 Pa. Superior Ct. 57, 74 A. 2d 668; *Com. ex rel. George v. George,* 167 Pa. Superior Ct. 563, 76 A. 2d 459. The court below rests its decree on a finding that the relatrix was not a fit person to be entrusted with the care of a child of tender years[1].

---

[1] The trial court stated, "From the testimony it is apparent that it would be an understatement to say that the petitioner, Mary T. Shaak, was a person of loose morals."

Our independent examination of the record convinces us that no other factual conclusion is tenable.

It is true, as appellant argues, that although a mother's right to custody is not absolute, courts have always recognized the propriety of committing a child of tender years to its mother, and it is only for compelling reasons that the mother's right must yield to the best interests and welfare of the child. *Com. ex rel. Lucchetti v. Lucchetti,* 166 Pa. Superior Ct. 530, 531, 72 A. 2d 617. Where, as here, however, the evidence establishes the mother to be a woman of loose morals and further indicates neglect of the child she forfeits her right to custody. *Com. ex rel. Kreiling v. Kreiling,* 156 Pa. Superior Ct. 526, 40 A. 2d 704.

The relatrix cannot align herself with those parents who have won custody of a child despite a past lapse from moral standards. The cases relied upon by relatrix are either cases in which the parent was not otherwise at fault (*Com. ex rel. Martocello v. Martocello,* 148 Pa. Superior Ct. 562, 25 A. 2d 855), or cases in which, though the record amply demonstrated the moral delinquency of the parent, there was counteracting evidence of prolonged and seemingly permanent reform. *Com. ex rel. Kevitch v. McCue,* 165 Pa. Superior Ct. 49, 67 A. 2d 582. The relatrix in the case at bar has presented no evidence which would justify us in concluding that she has reformed, and there was positive evidence that she neglected the child while it was under her care.

The paramount consideration is at all times the welfare of the child, which includes its physical, intellectual, moral and spiritual well-being, and all other considerations are subordinate. *Com. ex rel. Haller v. Hanna,* 168 Pa. Superior Ct. 217, 221, 77 A. 2d 750; affirmed, 367 Pa. 592, 81 A. 2d 546. This principle holds true whether the contest is between parents or

between a parent and a third person. Where, as here, the mother is unfit and the father lacks the initiative to provide a home for the child, it is clear that her welfare is best served by an award of custody to the only person fit, capable and willing to care for her.

Order affirmed.