124

Commonwealth ex rel. Buckner *v.* Barr, Appellant.

Argued November 14, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J., absent).

*Alvin J. Porsche,* for appellants.

*Regis C. Nairn,* with him *Elizabeth Bailey,* for appellee.

Opinion by Gunther, J., March 17, 1953:

This is a habeas corpus proceeding involving the custody of a five year old child. The action was instituted by the natural mother against the respondents, who are no blood relation to the child, but who have had actual custody for over four years. The court below awarded custody to the relatrix.

Relatrix was married November 4, 1944 at the age of sixteen and gave birth to two children, one in 1945 and the one in question in June, 1947. In May, 1948 she and her husband separated and the children were placed in the home of a friend of the husband, who happened to be the daughter of respondents. The children remained with respondents' daughter in Philadelphia for two months; then the younger one was given to respondents for a few months. Subsequently the husband took both children to Seattle, Washington, for a while; and finally, in November, 1948 the younger child was returned to respondents in Pittsburgh, where he has remained. During this period relatrix visited her relatives in New York and upon discovering that her two children had been taken to Seattle, Washington, set out for that state, arriving many months later. Once there, she secured, and has maintained, custody of her older child. In October, 1950 she came to Pittsburgh and, since that time, has vigorously sought custody of her younger child. The child's father is, and has been, in the navy, stationed in Tennessee, and cannot possibly take care of his children.

The burden here rests upon respondents to establish that the order of the court below is, under the evidence, erroneous or based on a mistake of law. *Commonwealth ex rel. Shaak v. Shaak,* 171 Pa. Superior Ct.

122, 90 A. 2d 270, An independent examination of the record reveals no such error of the court below.

Our primary concern is for the best interests and welfare of the child and custody will be awarded accordingly. In deciding that question, we are guided by the rule that prima facie the natural mother is entitled to custody, and departure from this rule will be allowed only by impelling reasons (*Com. ex rel. Shelly v. Sipler,* 172 Pa. Superior Ct. 207, 92 A. 2d 898), such as, for example, abandonment by the mother: *Com. ex rel. Haller v. Hanna,* 168 Pa. Superior Ct. 217, 77 A. 2d 750; neglect: *Com. ex rel. Harry v. Eastridge,* 172 Pa. Superior Ct. 49, 91 A. 2d 910; or moral laxity: *Com. ex rel. Shaak v. Shaak,* supra. No such compelling reasons of unfitness of the mother appear in this record. No charges of immorality were made against relatrix, nor were there any serious charges of neglect. Respondents rest their case wholly on allegations of abandonment and unfitness of the home relatrix would provide.

Relatrix was uncontradicted in her testimony that her husband threw her bodily from their home in Philadelphia; that, being without money, she then visited her mother in New York; that on her return she discovered her children were in the State of Washington and that she immediately set out for that state. She further testified that she was required to hitch-hike across the country and thus it took her many long months to arrive at her destination. When she arrived in Seattle she forthwith took possession of her older child and wrote to respondents in Pittsburgh demanding the return of the other child. Except for one letter sent by registered mail, she received no reply to several letters. She finally came to Pittsburgh, secured the help of the Legal Aid Society, and instituted these proceedings.

We do not feel that such a record shows any settled intent or purpose to abandon her children and to forego all parental duties. Her constant pursuit of her children, over a considerable period of time, evinces quite the opposite purpose and intent. Respondents make the unsupported allegation that relatrix showed no desire to be with her children for a period of three and one-half years. The evidence establishes that the separation occurred in May, 1948 and the first meeting with respondents occurred in November, 1950—a period of two and one-half years. Relatrix' testimony satisfactorily explains the lapse of time; it is quite understandable that a young girl whose marriage had broken up and who was penniless would be bewildered and not act with the speed and decisiveness of someone more mature. That she did act, however, with the settled purpose of reclaiming her children is clear from the evidence. Further, the evasive testimony of one of respondents tends to substantiate the fact that relatrix did write her several times but received no answers.

The fitness of relatrix' present home is established by the evidence. She is now remarried, and living in the State of Washington with a husband who has signified his willingness to adopt both children. Reports from social agencies there indicate a very satisfactory reputation for relatrix' husband and a good home. Respondents imply that the distance to Washington casts some doubt upon the desirability of relatrix' home and of removing the child from the jurisdiction. We have, however, sufficient testimony to show the satisfactory qualifications of the child's new surroundings and removal from the jurisdiction is not a controlling factor. *Com. ex rel. Haller v. Hanna*, supra.

We are presented, therefore, with a situation in which we must choose between two homes of equally good environment; nor can anything be said against

any of the parties personally. The result is that we must apply the general rule that the mother has a primary claim to her child and award custody accordingly. The reluctance of respondents to relinquish a child they have come to love is understandable, but our sympathy for them must not stand in the way of this mother's rights. The child may, of course, suffer a temporary wrench of emotion, but it is better that the break should occur now while he is still of a tender age.

Judgment affirmed.

Judge DITHRICH concurs in the result.

------

DISSENTING OPINION BY RHODES, P. J.:

I dissent from the majority opinion in this habeas corpus proceeding for the custody of the minor child Lawrence Kenneth Eastman. In the application of the rule that a mother has a prima facie right to the custody of a child of tender years, the welfare of the child has been totally ignored. The child was born on July 12, 1947, in Philadelphia, and, with the exception of the first six months, relatrix has not been with the child. In fact, she abandoned her two children in Philadelphia while her husband was serving in the United States Navy. Until November, 1950, she evidenced no concern about the child. The father of the child, who is still in the United States Navy, desires the custody of his son to remain with the respondents.

Relatrix now lives in the State of Washington with her second husband, who did not appear or testify in these proceedings. To conclude that it is proper to remove this child from his present surroundings where he has lived for nearly five years, without knowing relatrix, to an isolated farm in the State of Washing-

ton, is to callously ignore the child's welfare. Respondents have the ability to properly provide for the child and they have an adequate home. The majority opinion states that the primary concern is for the best interests and welfare of the child, and then proceeds to subordinate such interests to a rule of law. There is no justification for the statement in the majority opinion that "we must choose between two homes of equally good environment; nor can anything be said against any of the parties personally. The result is that we must apply the general rule that the mother has a primary claim to her child and award custody accordingly." Even if the factual statements are accepted, a child's welfare is not determined by such a formula. Without emphasizing the conduct of the relatrix, which in my opinion is sufficient to preclude granting custody to her, it is only necessary to refer to the surroundings to which the child will be transferred. Relatrix and her present husband have a 50-acre farm in the State of Washington. According to the testimony they have 17 head of cattle, 100 chickens, 13 geese, 2 dogs, and 1 cat. Only 10 acres of the farm, if it can be so described, are cultivated, and the income from the sale of milk is approximately $100 a month. The nearest community with schools and churches is three miles distant. Relatrix' husband is obliged to work elsewhere to sustain the family, which probably includes at this time at least two children. It is not difficult to realize the impact upon this child if transferred from his present satisfactory and healthful surroundings and home life to an isolated home and placed among strangers.

It is not a matter of sympathy for respondents, but it is a vital factor in this child's present and future well-being that he remain with respondents. The majority opinion concedes that the child may "suffer a

130

temporary wrench of emotion," but this concession, to state it mildly, displays little knowledge of child psychology. The child should not be subjected to the ordeal and the risks which a change of custody involves.

Judge Ross joins in this dissent.