## Clark Adoption Case.

Argued November 13, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Fred B. Trescher*, with him *Kunkle & Trescher*, for appellants.

*Carroll Caruthers*, with him *Frank A. Rugh*, for appellees.

OPINION BY WRIGHT, J., March 16, 1954:

This is an appeal from a final decree of the Orphans' Court of Westmoreland County dismissing a petition for adoption. It has been stipulated that the parties submit to the jurisdiction of this court. See *Oelberman Adoption Case*, 167 Pa. Superior Ct. 407, 74 A. 2d 790. The natural mother of the child involved refused her consent, and appeared in opposition to the petition. The appellant petitioners are an uncle and maternal aunt with whom the child has lived and by whom she has been reared and cared for exclusively since her earliest infancy. The controlling issue is whether the natural mother abandoned the child, thereby rendering her consent unnecessary.

Freda Kemerer Kunkle is the sister of Olive Kemerer Clark, who is the natural mother of a child born May 11, 1947, and named Patricia Ann. When

this child was conceived, Olive was a widow. She married Walter Clark on December 6, 1946, but Walter is not the child's father. Before the marriage, both Walter and Olive said they did not want the child. It was agreed that Freda and her husband should adopt it. Freda got the child one week after its birth, but returned it immediately at the insistence of her husband. His position was that if Olive wanted them to have the baby she should "fetch it down herself". Olive and Walter then brought the child to the Kunkle home, and she has been with the Kunkles ever since. They have furnished her support and maintenance. The court below found that the child had in fact been left with the Kunkles for adoption, but held that this circumstance and Olive's subsequent failure to attempt to resume maternal relationship did not constitute abandonment because she "was under pressure from her husband". We do not agree with this conclusion.

The controlling legal principles have been recently restated: *Harvey Adoption Case*, 375 Pa. 1, 99 A. 2d 276. See also *Ashton Adoption Case*, 374 Pa. 185, 97 A. 2d 368. In brief, appellate review in an adoption case is by certiorari in the broadest sense. The first question for our determination is whether the mother abandoned the child for a period of at least six months within the meaning of section 2 of the Act of 1925, P. L. 127, as amended, 1 P.S. §2. If that question is answered affirmatively, the second question is whether the adoption sought would be for the best interest and welfare of the child. Abandonment imports any conduct on the part of the parent which evidences a settled purpose to forego all parental duties and relinquish parental claims to the child.[1] The finding of

---

[1] Abandonment has now been defined by the legislature as "conduct on the part of a parent which evidences a settled purpose of relinquishing parental claim to the child and of refusing or fail-

the hearing judge in regard to abandonment, being a deduction or inference from established facts and therefore the result of reasoning, is reviewable on appeal.

The court below relied principally upon *Susko Adoption Case,* 363 Pa. 78, 69 A. 2d 132. The main question in that case was whether the testimony supported a finding that the written consent of the natural mother was legally ineffective. After refusing for over seven months following the child's birth, the mother finally gave it up and signed the consent. The mother was only 18 years of age at the time. Her mother had just passed away, and she was "subjected to reprehensible coercion upon the part of her brothers". Within three months she withdrew her consent and attempted to reclaim the child. After holding that the consent was invalid, the Supreme Court concluded that the mother's conduct did not indicate an attempt to abandon, irrespective of the fact that the statutory period of six months had not elapsed. The record in the case at bar discloses a materially different factual situation.

There is no evidence in the present case to support a finding that Olive gave up custody of the child under coercion. Dr. Roy Monsour, a disinterested witness, testified that, both before and after the birth, Olive and Walter each stated that they did not want the child. Olive was 27 years of age at the time, and the testimony warrants the conclusion that she was wise in the ways of the world. She voluntarily placed the child with the Kunkles for adoption and made no attempt to reclaim it for over five years. The facts under consideration resemble those in *Davies Adoption Case,* 353 Pa. 579, 46 A. 2d 252. In that case a mother gave up a five weeks old child and made no attempt to reclaim

ing to perform parental duties". See section 1(a) of Act No. 400 of 1953.

it for two years and eight months. The lower court's conclusion that abandonment had not been shown was reversed. The following language of Mr. Justice JONES is particularly appropriate here:

"Abandonment is not an ambulatory thing the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child. We do not mean to say that the natural parental right to a child, which has been nullified by abandonment, may not later be retrieved. It may be. But, as the parent's consent to an adoption is no longer necessary, once abandonment has been proven with required legal sufficiency, the welfare of the abandoned child is the primary and paramount concern of the court unaffected by the desire or caprice of the abandoning parent.

"When, then, does abandonment become complete? That is a question of fact to be determined from the evidence. It requires an intent to escape parental responsibility, and conduct in effectuation of such intent: see Hazuka's Case, supra. However, the inexorable circumstances of a child that has been abandoned may soon render the abandonment effectual. That is necessarily so. A child's natural needs for food, clothing and shelter demand that someone immediately assume the attendant responsibility which an abandoning parent has ignored; and, that responsibility endures constantly. It does not await the capricious decision of an uncertain parent, perhaps years later. The longer the responsibility continues to be discharged capably by the foster parent, the stronger become the ties that form out of the new relationship until there comes a time—possibly, not long deferred,—when the welfare of the child may justly require that the parental responsibility be allowed to remain where the abandoning parent has willingly permitted it to be".

Our most recent case on the subject is *McNutt Appeal*, 169 Pa. Superior Ct. 641, 84 A. 2d 360. There a child three weeks old was voluntarily placed for adoption with the mother's uncle and aunt. The mother testified that she gave up the child because of her inability to take care of it and that she intended to reclaim the child when she obtained a divorce. She did not contribute to the support of the child or assume any responsibility for its care and training for a period of two years and four months. We approved the conclusion of the hearing judge that abandonment had been shown, and that the welfare of the child would be promoted by granting the petition for adoption.

In the present case, the evidence is amply sufficient to show that Patricia Ann's welfare will be promoted by the adoption. There was no contradiction of the fact that the petitioners have already provided well for the child. Witnesses testified as to the suitability of their home and the good reputation enjoyed by Mr. and Mrs. Kunkle in the community. Unfortunately, the evidence relative to Olive's conduct was not so satisfactory. It may also be remarked that Walter's testimony does not indicate a convincing desire on his part to assume parental responsibility for Patricia Ann. In view of all of the circumstances, there can be no question that the child's welfare will best be served by having her continue under the parental authority, control and responsibility of the petitioners.

The decree of the court below is reversed at appellee's costs, and the record is remitted with directions that a decree of adoption be entered as prayed for.