## Commonwealth ex rel. Kraus *v.* Kraus et al., Appellants.

Argued November 19, 1957.   Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Frank C. Rayburn,* for father, appellant.

*J. Milton Klein,* with him *Morris B. Greenberg,* for second wife, appellant.

*Gustav W. Wilde,* with him *J. Milton Klein,* for mother, appellee.

OPINION BY WRIGHT, J., January 21, 1958:

We are here concerned with a three-way contest involving the custody of James Leroy Kraus, referred to hereinafter as Leroy, born February 18, 1952. The County Court of Allegheny County acquired jurisdiction because of a prior support order including Leroy's maintenance. Act of March 19, 1915, P. L. 5, 17 P.S. 653. And see *Commonwealth ex rel. Mann v. Mann,* 181 Pa. Superior Ct. 438, 124 A. 2d 432. The parties to the proceeding are (1) Susan Kraus Brooks, referred to hereinafter as Susan, the first wife of James R. Kraus, and Leroy's natural mother; (2) James R. Kraus, referred to hereinafter as James, the natural father of Leroy, and presently married to a third wife; (3) Audrey E. Kraus, referred to hereinafter as Audrey, the second wife of James R. Kraus, and the mother of his other two children, who has cared for Leroy for almost five years. After a six-day hearing an order was entered awarding custody of Leroy to Susan. We granted supersedeas pending the instant appeals of James and Audrey.

James and Susan were married on April 21, 1951, and separated in the summer of 1952. At No. C-2295 of 1952, Susan instituted a proceeding for support, which was thereafter continued indefinitely. Leroy was temporarily cared for by the mother of James. Susan and James were divorced on May 7, 1953. James married Audrey on May 9, 1953, and Leroy thereafter

lived with them. James and Audrey subsequently had two children, Kristine, born February 17, 1954, and Kim born May 30, 1955. A separation agreement was executed by James and Audrey on August 1, 1956, which agreement provided, inter alia, that Audrey should have "full and complete legal custody" of Leroy, Kristine, and Kim. On December 28, 1956, Audrey and James were divorced. On February 2, 1957, James married his third and present wife. On March 25, 1957, at No. C-2249 of 1955, the County Court of Allegheny County ordered James to pay Audrey support for the three children in the amount of $20.00 per week, whereupon James petitioned for Leroy's custody. Susan thereupon petitioned for custody in No. C-2295 of 1952. The two proceedings were consolidated for hearing and determination.

While natural parents have the primary right to a child's custody, there is no fixed and invariable rule that a natural parent, even though of good moral character, is entitled to custody under all circumstances. Each case must finally rest on and be determined by its own facts: *Commonwealth ex rel. Shroad v. Smith*, 180 Pa. Superior Ct. 445, 119 A. 2d 620. The right of natural parents is not absolute and must yield to the best interests and welfare of the child: *Commonwealth ex rel. Logsdon v. Logsdon*, 156 Pa. Superior Ct. 85, 39 A. 2d 461. A parent's prima facie right to custody may be forfeited if convincing reasons appear that the best interests of the child will be served by awarding custody to someone else: *Commonwealth ex rel. Burke v. Birch*, 169 Pa. Superior Ct. 537, 83 A. 2d 426. The custody of a child is not a property right, *Commonwealth ex rel. Donie v. Ferree*, 175 Pa. Superior Ct. 586, 106 A. 2d 681, and the matter must be viewed with relation to the happiness, training, development, and moral, physical and spiritual well-being of the child:

*Oelberman Adoption Case,* 167 Pa. Superior Ct. 407, 74 A. 2d 790. The paramount consideration is at all times the welfare of the child, and all other considerations are subordinate: *Commonwealth ex rel. Shamenek v. Allen,* 179 Pa. Superior Ct. 169, 116 A. 2d 336. See also *Nauman's Adoption,* 177 Pa. Superior Ct. 317, 110 A. 2d 925; *Commonwealth ex rel. McDonald v. McDonald,* 183 Pa. Superior Ct. 411, 132 A. 2d 710; *Commonwealth ex rel. McNamee v. Jackson,* 183 Pa. Superior Ct. 522, 132 A. 2d 396.

We are fully in accord with the conclusion of the court below that custody should not be awarded to James. In the words of Judge GUFFEY: "At an age of 25 he has been married three times and has fathered three children whom he can neither support nor give the guidance that every child needs . . . In view of his past life no Court could consider him a fit parent to raise a child". James concedes that Audrey is a good mother, and voluntarily relinquished to her the custody of all three of his children. The suitability of Audrey's home was clearly established by the testimony of a nurse on the staff of the Allegheny County Health Department, and by a number of other witnesses. James has completely failed to demonstrate that Leroy's welfare would best be served by countenancing a repudiation of the terms of the separation agreement.

Coming now to the issue as between Susan and Audrey, the court below attributed to Audrey "the responsibility for breaking up the marriage of Susan and James". On the contrary, the record shows that James and Audrey became acquainted after Susan and James had separated, and it was not until some three months later that James disclosed that he was a married man. The court below was also apparently impressed by the fact that Audrey and the children were crying during an interview with a court investigator, to which cir-

cumstance we attach no disqualifying significance whatsoever. Finally, the court below stressed the fact that Audrey is on public assistance and has no means to support her own two children. Assuming arguendo, which does not clearly appear in the record, that Susan presently has greater financial resources, that circumstance is not controlling in determining custody: *Commonwealth ex rel. George v. George,* 167 Pa. Superior Ct. 563, 76 A. 2d 459. While we are not empowered to nullify the fact finding function of the hearing judge, *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 95 A. 2d 350, we are charged with the responsibility of seeing to it that the relevant legal principles are correctly applied. It is on this basis that we have concluded that the court below erred, and that Leroy should remain in Audrey's custody.

In his opinion the hearing judge makes the following statement: "At the outset of the trial the Court stated that the natural mother is entitled to custody, unless it can be shown she is not fit to have the child. The main issue involved in the trial is whether Susan has for some reason become a mother unfit and unworthy of her child. Only if this is answered in the affirmative is it necessary to consider the respective qualifications of the other claimants". He then reasoned that, since he could not conclude that Susan had abandoned the child, he must recognize "the presumption in law that a mother unless proven unfit is always entitled to the custody of her children, especially the firstborn". It is important to note that we are not here dealing with an adoption case in which abandonment must be found to obviate the necessity of consent. In the words of President Judge RHODES in *Oelberman Adoption Case,* supra, 167 Pa. Superior Ct. 407, 74 A. 2d 790, "it does not follow that because a decree of adoption has been refused the custody of the

child must be given to relatrix". See also *Petition of Sulewski,* 113 Pa. Superior Ct. 301, 173 A. 747. The court below relied upon *Commonwealth ex rel. Buckner v. Barr,* 173 Pa. Superior Ct. 124, 95 A. 2d 355, affirmed 376 Pa. 9, 101 A. 2d 621, which can be readily distinguished. In that case the natural mother persisted over a period of four years in her efforts to secure custody of the child and on one occasion traveled from Pennsylvania to the State of Washington. Moreover, there was no evidence (at the time of the hearing in the *Buckner* case) impugning the morals of the natural mother. Abandonment imports any conduct on the part of a parent which evidences a settled purpose to forego all parental duties and relinquish parental claim. The finding of the hearing judge in regard to abandonment, being a deduction or inference from established facts and therefore the result of reasoning is reviewable on appeal: *Clark Adoption Case,* 175 Pa. Superior Ct. 68, 103 A. 2d 470. Our independent review of this voluminous record has convinced us that the lower court erred in concluding that Susan did not abandon Leroy; further that, whether or not there was abandonment, Leroy's welfare will not be promoted by awarding custody to Susan.

In this latter connection, it unfortunately becomes necessary to refer to Susan's moral lapses in the past. Although unimportant in view of our ultimate conclusion, it should be noted that the hearing judge improperly limited cross-examination on this vital issue.[1]

---

[1] Record Page 479. "THE COURT: What is the purpose of this line of questioning? MR. RAYBURN: If it please the Court, the moral character is always an issue. THE COURT: Prove it affirmatively. Objection sustained. I will grant you an exception."

Record Page 502. "Q. At your interview there, how many men did you name as possible Fathers of your child? MR. WILDE: I object. THE COURT: Objection sustained. MR. RAYBURN: If it

Where the mother is a woman of loose morals, she forfeits her right to custody: *Commonwealth ex rel. Shaak v. Shaak,* 171 Pa. Superior Ct. 122, 90 A. 2d 270. After her separation from James, Susan's life was apparently one of promiscuous relationships with other men. An illustration is the incident with the sailor at the home of Mrs. Klinge, which we need not here detail. On November 13, 1953, Susan gave birth to an illegitimate child, which she immediately released for adoption. Sometime in April, 1956, Susan began living as man and wife with Stanley Brooks. Susan became pregnant. On November 6, 1956, she and Stanley were married. A child was born on January 21, 1957, but died at birth. Stanley Brooks, whose first marriage was terminated by a divorce, must accept equal responsibility for the meretricious relationship with Susan before their marriage. He was not called as a witness and there is no competent testimony concerning his attitude toward Leroy. It is in this home that the lower court would place the child.

The lower court also erred in expressly disregarding the important circumstance that Audrey has lovingly cared for Leroy as the only mother he has known since he was fourteen months old. In *Davies Adoption*

---

please the Court. I think this is important. I can't see how we are going to establish moral fitness if we are not going to be allowed to Cross-Examine the witnesses. We are being ruled right out of Court."

Record Page 504. "Q. Isn't it true that you named five or six . . . MR. WILDE: I object to that, Your Honor. THE COURT: I will sustain that objection."

Record Page 539. "Q. In this discussion with the agency, how many men did you name as the putative Father of the child? MR. WILDE: I object. THE COURT: Objection sustained . . . You can only prove that by affirmative proof. You are not going to prove it by Cross-Examination."

*Case,* 353 Pa. 579, 46 A. 2d 252, which involved a four-year old child, Mr. Justice (now Mr. Chief Justice) JONES said: "The emotional disturbance to a child that would threaten from its being removed summarily and permanently from familiar and agreeable surroundings and associations, incident to the only parental control and supervision it has ever known, could have a very harmful effect on the child's whole life. Fortunately, the law's regard for a child's welfare does not admit of any such injury or harm being done it". In *Commonwealth ex rel. Children's Aid Society v. Gard,* 362 Pa. 85, 66 A. 2d 300, the child in question had been in a foster home for approximately four years, having been placed there when she was five months old. The following excerpt from the opinion of Mr. Chief Justice MAXEY, awarding custody to the foster parents, is particularly applicable to the present factual situation: "A child of two years of age or under will form new attachments quickly if treated kindly by those into whose care it is given. In that respect it resembles a young tree whose roots have not yet taken deep hold in the nourishing earth, but when a child is much beyond the age of two years, it becomes strongly attached to those who stand in parental relationship to it and who have tenderly cared for it. Its bonds of affection have become so strong that to sunder them suddenly may result not only in the child's unhappiness, but also in its physical injury . . . Nothing could be more cruel than the forceable separation of a child from either its real or foster parents by whom it has been lovingly cared for and to whom it is bound by strong ties of affection". Finally, we cannot be unmindful of the fact that Leroy, during his early formative years, has been reared in a family relationship with two sisters of approximately his own age. It is to his advantage that this relationship should not be disturbed. See

*Commonwealth ex rel. Reese v. Mellors,* 152 Pa. Superior Ct. 596, 33 A. 2d 516.

The order of the lower court is reversed at the cost of appellant James R. Kraus, and it is ordered and decreed that James Leroy Kraus remain in the custody of Audrey E. Kraus.