## Cochran Appeal.

Argued March 19, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Before SHUGHART, P. J.

Hermas L. Weary, with him Hyman Goldstein, and Weary, Hess & Humer, for appellant.

Charles H. Stone, Special Assistant District Attorney, with him Clinton R. Weidner, District Attorney, for appellee.

OPINION BY ERVIN, J., June 11, 1958:

On April 10, 1946 the Juvenile Court of Cumberland County adjudged Barbara Ellen Neff, born May 30, 1938, Augusta Ann Neff, born September 9, 1939, Beatrice Diane Neff, born May 19, 1941, and Kenneth R. Neff, Jr., born June 27, 1942, neglected children and committed them to the care and custody of the Child Welfare Service. (Act of June 2, 1933, P. L. 1433, §2, 11 PS §244) The children remained in foster homes for approximately two years and on March 5, 1948 the said court by further order committed them to the care of The Methodist Home for Children, where all but Barbara still remain. When they entered the

Methodist Home, they were aged 10, 9, 8 and 6 respectively. When the children entered the Home their father agreed to contribute $55.00 a month to the Home toward their support. He has substantially complied with the agreement. His present salary is $4,100.00 a year. The parents were divorced by a decree entered April 26, 1946. Both parents have since remarried. The father and his second wife now have an additional male child who at the time of the hearing was nearly seven years of age. The father resides in Mechanicsburg, only a few miles from the Home. He and the children attend the Methodist Church in Mechanicsburg nearly every Sunday and sit together. The mother was remarried on March 12, 1949 and now lives in Fair Lawn, New Jersey, in a home valued at $20,000.00, with a mortgage of $12,500.00. Both parents have continued to visit the children at the Home.

On February 11, 1957 the mother presented a petition to the court below to revoke the order of March 5, 1948 and to have custody of the children awarded to her. On June 19, 1957 the court entered an order discharging Barbara Ellen Neff from the care and custody of the Home and placing her in the custody of the mother. Barbara attained the age of 19 on May 30, 1957 and had successfully completed one year in Lycoming College. On August 9, 1957 the court below entered another order refusing the petition of the mother as to the other three children and stated: "This order to be without prejudice to the petitioner to reapply when circumstances so warrant." The mother appealed. It is our duty to review the entire record and to exercise an independent judgment on the merits: *Ciammaichella Appeal,* 369 Pa. 278, 281, 282, 85 A. 2d 406; *Rinker Appeal,* 180 Pa. Superior Ct. 143, 150, 117 A. 2d 780.

A review of the entire record has convinced a majority of this Court that the best interest and welfare of these three children will be attained at the present time by refusing the prayer of the mother's petition.

We would agree that in the usual case a home environment and family care are more desirable than the finest institution, providing, of course, that the home is adequate and the family care wholesome. But this is not the usual case. As Judge WOODSIDE so well said at page 148 in *Rinker Appeal,* supra: "It is a serious matter for the long arm of the state to reach into a home and snatch a child from its mother. It is a power which a government dedicated to freedom for the individual should exercise with extreme care, and only where the evidence clearly establishes its necessity. Yet, of course, there are cases where such authority must be exercised for the protection and welfare of children." In this case, however, the mother is seeking to remove the children from the place where they have spent their tender years and the major portion of their minority.

While we did not have the privilege of seeing these children in person, as did the court below, the record convinces us that his observation was accurate. Judge SHUGHART said: "It is apparent from the appearance of the three who were in Court that they have received the best in physical care. They were well mannered, cheerful and were attractively dressed. It is obvious that all are progressing well in school, the older one having completed her first year in college. In addition, two of them who have shown some talent for music have received special training. Our own observation of their appearance and demeanor furnishes clear and unmistakable proof of the splendid care they have received at the Home from Reverend Victor Hann, the Superintendent, and his staff. These children, their

appearance, their excellent records, are the best evidence of the high quality of the care they have received." At the time of the hearing in June of 1957, the children had spent nine years at the Home and two years theretofore in foster homes. At the time of the filing of this opinion the youngest child, Kenneth, Jr., is approximately 16 years of age and Augusta is nearing 19 years of age and probably has completed high school and is ready to enter a hospital for training as a nurse, if she is still of that mind. Beatrice and Kenneth, Jr. should have respectively one year and two years to go to complete high school and will then be ready for college. Dr. Hann testified that all of the children are college material. The girls expressed a desire to go with their mother. This is understandable but their preference must be based on good reasons: *Com. ex rel. Shamenek v. Allen,* 179 Pa. Superior Ct. 169, 176, 116 A. 2d 336. They would undoubtedly enjoy a greater freedom at the home of their mother than they have at the Methodist Home. We are not at all convinced, however, that greater freedom would improve their welfare. Much of the juvenile delinquency present today may be traceable to the enlarged freedom of youth. Some people firmly believe that juvenile delinquency could be reduced by a greater discipline and stricter supervision. Be this as it may, this record convinces us that these children have not been unduly restricted and that they have received a fine religious training which certainly will stand them in good stead in days to come. This is not a case like *Com. ex rel. Shamenek v. Allen,* supra, where the child, because of the father's treatment of her deceased mother, developed so great an antipathy toward the father that it actually caused her to become ill.

Our conclusion in this case is largely based (as it was in the court below) upon the belief that the moth-

er and her present husband do not fully appreciate the enormity of the expense necessary to keep four children in high school and college at the same time. The mother and her present husband have annual gross earnings of $12,700.00. The husband receives $5,000.00 from his present employment at Curtis-Wright and $3,200.00 retirement pay as an army officer and the mother receives $4,500.00 from her employment. The mother intends to give up her employment to take care of the children if they are awarded to her. This will reduce their gross annual income to $8,200.00 a year. It costs approximately $1,200.00 a year to keep Barbara in college, thus reducing the annual income to $7,000.00 a year. Out of this the two adults must live and then find money to put three more children through high school and college. With costs as they are today, this will be a very difficult thing to do. The failure to do all or any of it will seriously affect the best welfare of the children. If they remain at the Home they will be adequately provided for and their college training will be assured. As was so well said in *Com. ex rel. McNamee v. Jackson,* 183 Pa. Superior Ct. 522, 526, 132 A. 2d 396, "By permitting these children to reside . . . [where they are] we are not gambling with their future welfare and happiness, as we would be doing were we to . . . [remove them from their present custody]."

It must be remembered that the court below did not finally foreclose the possibility of releasing all or some of the three remaining children from the present wardship and giving them to the mother. Judge SHUGHART said, in reference to the order giving Barbara to the mother: "Under the circumstances it might be advisable to see the results of this expense upon the mother and her husband before making a final decision on the other three." At the conclusion of his opinion, he fur-

ther said: "The petition as to the younger children will, therefore, be dismissed without prejudice to the petitioners to petition again when circumstances warant." It may very well be that changed circumstances might now dictate the release of Augusta Ann from the present wardship and the award of her custody to the mother if another petition be now presented to the court below.

Our conclusion is that the court below handled a very difficult case in an admirable way and our independent conclusion is that we cannot improve upon it.

Order affirmed.

DISSENTING OPINION BY WRIGHT, J.:

Notwithstanding my high regard for the learned President Judge of the court below, and for my colleagues in the majority, I respectfully submit that it is a clear abuse of judicial discretion to require Kenneth, Beatrice, and Augusta Neff, aged respectively sixteen, seventeen, and eighteen years, who are not delinquent children and are no longer neglected children, to remain in an institution, however worthy, when they desire to be with their natural mother, who has been found presently fit to care for them.

Section 12 of The Juvenile Court Law[1] provides that all orders of the juvenile court shall be subject to amendment or change. Section 16 of said statute (11 P.S. 258) reads in pertinent part as follows (italics supplied):

"If, at any time after the final order of any juvenile court placing or committing any dependent, neglected or delinquent child, *a change of circumstances has taken place which, in the opinion of the parent* or parents or next friend of such child, warrants the revocation or

---

[1] Act of 1933, P. L. 1433, Section 12, 11 P.S. 254.

modification of such final order, such child shall, by his or her parent or parents or next friend, have the right to file a petition in such court asking for a revocation or modification of such final order".

Discussing Section 16 of The Juvenile Court Law in *Ciammaichella Appeal*, 369 Pa. 278, 85 A. 2d 406, the Supreme Court said: "Appellants would limit the 'change of circumstances' as used in this section to a change of circumstances relating to the child and not to the parent. Such construction is not warranted. If the parent or parents of a dependent child become able to and are willing to support the child, surely the Juvenile Court has the right to remand the child to the parental custody".

The majority concedes that its conclusion, as was the conclusion of the court below, is largely based upon financial considerations. However, such considerations are not controlling even in habeas corpus cases, *Commonwealth ex rel. Kraus v. Kraus*, 185 Pa. Superior Ct. 167, 138 A. 2d 225, and it is important to note that this is not a habeas corpus proceeding. See *Rinker Appeal*, 180 Pa. Superior Ct. 143, 117 A. 2d 780. As we said in that case: "The family is an institution which preceded governments. Its sanctity was universally recognized before judges or statutes or constitutions or welfare organizations were known to man. The right of a child to a mother and a mother to a child are rights created by natural law. They are rights attributable to the nature of mankind rather than to the enactments of law".

Since few cases involving a contest by an institution for custody of children reach the appellate courts, we call attention to three lower court decisions in which the problem was considered. In *Commonwealth ex rel. Field v. Madden*, 43 Luzerne L. R. 255, it was stated: "But we are persuaded that a home environment and

family care are more desirable than the finest institution, providing, of course, that the home environment is adequate and the family care wholesome". The uncontradicted evidence in the case at bar is that the mother's home is adequate and the family wholesome.[2] In *Commonwealth ex rel. Lyter v. Witmer*, 53 Dauphin 377, the court said: "No matter how competent and sympathetic the treatment of a child in an institution may be, it cannot be compared with the loving care received in a normal family life. Only in a totalitarian government do we find the philosophy that 'efficient institutional care' is considered preferable to normal family life". In the case of *In re Carol Ann Schuchman*, 37 Cumberland L. J. 123, wherein the situation, both procedurally and factually, was markedly similar to that in the case at bar, the Juvenile Court of Franklin County recently directed the discharge of a child of fifteen years from the Scotland School.

I would reverse the order of the court below, and direct that Kenneth, Beatrice, and Augusta Neff be discharged into the custody of their mother.

WATKINS, J., joins in this dissent.

———

DISSENTING OPINION BY WOODSIDE, J.:

I join in all that Judge WRIGHT has written in his able dissenting opinion. However, I should like to add that I am primarily moved to dissent on the following two grounds: [1] That the Neff children can no longer be classified as neglected; and [2] That it is in the nature of unwarranted punishment to force these young people, now 16, 17 and 18 years of age, to remain in an institution against their will when a parent is willing and able to give them a respectable home.

———

[2] The court below acknowledged this fact on June 19, 1957, by directing the discharge of Barbara Neff, aged nineteen.

A neglected child is defined in The Juvenile Court Law of June 2, 1933, P. L. 1433, §1, 11 PS §243, as follows: "[5] The words 'neglected child' include: [a] A child who is abandoned by his or her parent, . . .; [b] A child who lacks proper parental care by reason of the fault or habits of his or her parent . . .; [c] A child whose parent, . . . neglects or refuses to provide proper or necessary subsistence, education, medical or surgical care, or other care necessary for his or her health, morals, or well-being; [d] A child whose parent, . . . neglects or refuses to provide the special care made necessary by his or her mental condition; [e] A child who is found in a disreputable place or associates with vagrant, vicious or immoral persons; [f] A child who engages in an occupation, or in a situation, dangerous to life or limb, or injurious to the health or morals of himself, herself or others."

Because the church home is caring for the Neff children they are not now, in fact, neglected, but neither would they any longer fit into any of the above categories were the Juvenile Court to discharge them from the church home. They are thus no longer neglected either in fact or in law. Although the mother had neglected them at the time that the original order was made, the evidence now before us indicates she is presently willing and able to furnish them a respectable home and to adequately support and look after them. Their mother and her husband live in a $20,000 home and have a combined income of $12,700 per year. There is no suggestion that their home is not a proper place for these children to reside.

As I view it, the order before us is not only contrary to The Juvenile Court Law, supra, but is fair to no person. It is not fair to the mother who seeks to have custody of her children; it is not fair to these young people who seek the experience of living in a

home instead of an institution; it is not fair to those who operate and support the institution which is looking after these children whose parent is willing and able to look after them; and it is not fair to the taxpayers of Pennsylvania who are paying for the education of children whose mother lives in an expensive home in New Jersey.

For many years I have known Superintendent and Mrs. Victor B. Hann, who are in charge of the Neff children at The Methodist Home for Children. They are, as the record shows and the court below found, kind, capable, religious people who have performed an outstanding task in rearing these children. Nevertheless, the children's mother is now willing and able to provide a satisfactory home.

It is natural that these children should prefer their mother's home to an institution, however excellent the latter may be. They have emphatically expressed their preference. I think that to deny their request is in the nature of the imposition of punishment upon these unfortunate children, who were brought into juvenile court, not as delinquents, but as neglected children. They do not deserve the stern treatment which they have received at the hands of the law. Their plea to be released from an institution in order to reside in their mother's home is entitled to a more sympathetic ear than the courts have given it.