## Commonwealth ex rel. Ackerman v. Ackerman

112

*Paul M. Petro*, for petitioner.

*David H. Weiner* and *C. Joseph Recht*, for respondents.

SWEET, P. J., July 29, 1964.—In a child custody case, the paramount consideration is at all times the welfare and best interest of the child: Commonwealth ex rel. Finney v. Murphy, 175 Pa. Superior Ct. 364 (1954). This principle of the best interest of the child transcends all other considerations including inter alia the matter of religious consistency. Religion is an important matter and should be given some consideration, but it is not determinative: English v. English, 194 Pa. Superior Ct. 25 (1960) ; Oelberman Adoption Case, 167 Pa. Superior Ct. 407 (1950) ; Kuntz v. Stackhouse, 176 Pa. Superior Ct. 361 (1954) ; and Donie v. Ferree, 175 Pa. Superior Ct. 586 (1954). In a child custody

case, the fact that the child will be removed to a place outside the Commonwealth is not controlling: Commonwealth ex rel. Buckner v. Barr, 173 Pa. Superior Ct. 124 (1953). Prima facie, the natural mother of a child of tender years is entitled to custody: Commonwealth v. Addicks, 5 Binney 519 (1813); Buckner, Finney, Oelberman, all supra; Commonwealth ex rel. Haller v. Hanna, 168 Pa. Superior Ct. 217 (1951); Commonwealth ex rel. Lucchetti v. Lucchetti, 166 Pa. Superior Ct. 530 (1950); and a host of others.

These principles, being established by logic and history and confirmed by long repetition in the appellate courts, can be viewed as fixed, settled law.

Here, the mother and father of a four-year-old are divorced. The boy was brought up Jewish until three and one-half, but after divorce, the mother abandoned the Jewish religion to which she had become converted at or after the marriage, and reverted to Christianity, in this instance Methodism, and sent Robert Scott Ackerman to Methodist Sunday School. She had custody under an order of the late Judge George T. Cummins, November term, 1962, no. 381. The father, in violation of the order, but with some hasty advice from Allegheny County counsel, snatched the child from her, in Maryland, and brought him here. This action followed. The mother, standing on the extant and applicable order of court, demands his return.

Respondent's case is based on three factors, one would gather from the testimony: the maintenance of the boy's Jewish faith; the mother's addiction to fornication; and the fact that she intends to keep him outside the Commonwealth.

The respondent would evidently want us to apply the rule of Commonwealth ex rel. Shaak v. Shaak, 171 Pa. Superior Ct. 122 (1952), and Commonwealth ex rel. Bordlemay v. Bordlemay, 201 Pa. Superior Ct. 435

(1963), which seemingly find a promiscuous woman to be an unfit custodian of a young child. He spoiled the effect of this argument by having sexual intercourse with his divorced wife, post-maritally and, she says, forcibly. He admits to one or two other acts of unchastity since the divorce and before his remarriage last month. He was not asked if his second wife was one of these. It was admitted that the mother had seven different sexual contacts, mostly in automobiles, one of which gave her a venereal disease of which she is now seemingly cured. Without specifically finding as a fact that sexual purity is a condition precedent to custody of a child, we say here that these parties are in pari delicto. It would be a gratuitous reaffirmation of a bygone double standard to say that the woman is morally tarnished while the man is only answering the dictates of his nature. They are two cats in a bag.

The court will not compare or try to weigh and evaluate the relative merits of the Jewish and Christian faiths. We cannot call it morally wrong to send a four-year-old boy to Methodist Sunday School. See Derr v. Derr, 148 Pa. Superior Ct. 511 (1942). Absent a contractual agreement of the parents that this child be brought up Jewish, we cannot let religion dominate custody, but rather should expect that religious affiliation should follow custody. The mother is Methodist now and expecting to marry a Methodist. It would be hard to order the child over to the father solely to ensure a continuation of the rather tenuous bonds of faith forged this early in life. The Rabbi conceded that no psychological harm or jolt would come to the little boy by the change to Methodism, although he insisted that the boy had a "right to remain Jewish." See Kelley v. Kelley, 83 Pa. Superior Ct. 17 (1924); also, Shamenek v. Allen, 179 Pa. Superior Ct. 169 (1955).

The parol evidence rule precludes the father from establishing an oral agreement to raise the child Jew-

ish, since the father and mother entered into a stipulation, approved by the court, granting custody to the mother without any condition regarding the religion of Robert Scott Ackerman: Lefkowitz v. Hummel Furniture Co., 385 Pa. 244 (1956).

The burden is on the respondent here. He must overcome the principles we set forth at the outset of this opinion. He must move our discretion to overrule Judge Cummins, who served this county for 18 years as a trial judge. He must somehow justify the arbitrary methods he employed to gain momentary custody.

This he has not done, either in factual presentation or legal argument. Hence, we are obliged to make the following order.

*Order*

And now, July 29, 1964, the prayer of the petition is granted and the permanent custody of Robert Scott Ackerman, age four, is granted to his mother, Carol Ann Ackerman. The said Carol Ann Ackerman shall make Robert Scott Ackerman available each summer for a six-weeks visit to his father from approximately June 20 to July 31, upon the father's payment of the minimum transportation costs, through the Adult Probation Office of this court. The father, Harry M. Ackerman, shall continue to pay the sum of $50 per month for the support of the child, it being recognized that the liability to pay round-trip airline fare from California will cost about $20 per month extra. The said mother will post security with the prothonotary of Washington County in the amount of $300 that she will make the child available for the annual visit, or if his return is legally required, and will advise the court, by affidavit, of her current address.